Elliot C. Brown, an Infant, by Charles W. Floyd, his Guardian
ad Litem, v. John Spohr and Alfred B. Robinson, as Executors,
etc., of Joseph H. Brown, Deceased, and Others, Respondents.

*Trust — what elements are essential — what notes taken by trustees have an adequate
consideration — efficiency of a provision as to their enforcement — the trust is not
rendered invalid by the reservation of a power of revocation — nor by a recital that
the beneficiaries acquired their rights only through the settlor's bounty — what trust
is not a testamentary disposition.*

Joseph H. Brown, who did business under the name of Brown, Draper & Co., of
which firm he was the sole surviving partner, had, in addition to his capital
account with the firm, a loan account therewith. In 1893 Brown caused a
credit of $20,000 to be transferred from his loan account to the credit of his
niece, Marion Smith. Interest was added to this account from time to time
and moneys received by the said Marion Smith were charged against it.

December 31, 1896, when the balace in favor of Marion Smith was $21,620.37,
Brown drew a check to the order of said Marion Smith for $10,000, and, at his
instance, John Spohr, his bookkeeper, accompanied her to the bank, where the
money was drawn and turned over to Spohr, who deposited it to the credit of
the firm. This check was charged to her account and a new account was then
opened on the firm books in the names of John Spohr and A. B. Potterton,
trustees, which was credited with a cash item of $10,000.

January 7, 1897, Brown drew another check of $10,000 to the order of Marion Smith
and the same proceedings had with respect to the former check were repeated,
and the trustees were credited with the second $10,000 the following day.
The amount of this check was also charged to Marion Smith and the balance
remaining to her credit in such account was then transferred to Brown's loan
account, thus closing the original account.

Brown also executed a deed of trust, dated the day the first check was delivered
to Marion Smith, which recited a present delivery of $20,000 to Spohr and Pot-
terton in trust, among other things, for the following purposes: (1) To lend
the same to said firm upon demand notes of the firm, bearing interest at five
per cent, payable quarterly; (2) to demand payment of the notes at the death
of the settlor, or sooner, in their discretion, and to loan the proceeds upon
bonds secured by mortgages on improved and unincumbered property, as
therein provided; (3) to pay the interest in quarterly installments to said
Marion Smith during her life, and (4), if he survived her, to wind up the trust
and pay the money over to him, and if she survived him, then on her death to
pay the income to his nephew, J. Granville Smith, during life, and then to
pay the principal to one of the settlor's sons, provided, however, that if such
son was not then living the principal should go to two of the settlor's
daughters, or the survivor of them, and if neither should then be living, to
another son, and if he were not then living, then to the Chapin Home for the

Aged and Infirm of the City of New York. The instrument also provided that the settlor should have full power to revoke or change the terms of the trust, and that the beneficiaries were to receive the benefits of it as proceeding solely from his bounty.

The deed of trust was delivered to the trustees and a declaration of trust was executed by them to Brown.

October 4, 1901, Brown executed and delivered to the trustees a formal modification of the deed of trust, providing (1) that the interest should be paid to himself during life, and if Marion Smith should predecease him, the trust should cease and the subject thereof be transferred to him; (2) that if she survived him the income should be paid to her for life and upon her death the trust should cease and the principal be paid to her issue, or, if she left no issue, to said Chapin Home, and in other respects he reaffirmed the trusts, but the right to revoke or modify it was again expressly reserved. The trustees at this time signed and delivered to the settlor a corresponding declaration accepting the trust.

Subsequent to the creation of the Marion Smith trust Brown created eight other trusts in substantially the same manner and on substantially the same terms as the Marion Smith trust.

January 1, 1901, Brown admitted two new partners to his firm, and the firm, as thus constituted, acknowledged its liability upon the notes given to the respective trustees. Brown died without having revoked the trust, leaving a will by which he disinherited his family.

In an action brought by his infant son to procure an adjudication that the trusts were invalid, in which action it appeared that no rights of creditors were involved, it was

*Held,* that there existed, with respect to each of the trusts, the four essential elements of a valid trust of personal property, viz. : (1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee, and (4) the actual delivery of the fund or other property or of a legal assignment thereto to the trustee with the intention of passing legal title thereto to him as trustee;

That the firm notes were based upon a full and adequate consideration, and that the legal title thereto was in the trustees, and that, if payment thereof was resisted, the trustees could enforce them;

That neither the reservation of the power of revocation and of modification, contained in the deeds of trust, nor the recital that the beneficiaries received the benefits of the trusts solely through the bounty of the settlor, rendered the trusts illegal;

That the presence in the deeds of trust, other than in the case of Marion Smith, of the following clause: "And upon the decease of the said Joseph H. Brown (or before his decease should we in our discretion see fit so to do) to demand payment of said note or notes," which deeds were signed by Brown alone, did not deprive the trustees of the power, in their discretion, and without consulting Brown's wishes and even against his protest, to enforce the payment of the

· FIRST DEPARTMENT, NOVEMBER TERM, 1903.          [Vol. 87.

notés at any time, but that if they did attempt to collect the notes against his will, he could revoke such trusts; ,

That the trusts were not invalid on the ground that they constituted a testamentary disposition of Brown's property in violation of the Statute of Wills.

APPEAL by the plaintiff, Elliot C. Brown, an infant, by Charles W. Floyd, his guardian ad litem, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 12th day of May, 1903, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits.

The appellant is an infant son of Joseph H. Brown, deceased, who was the settlor of the trusts hereinafter mentioned. The action is brought for the cancellation of the deeds of trust upon the ground that the trusts are invalid and also to have it adjudged that the property, the subject-matter of the trusts, did not pass under the residuary clause of the settlor's will, but passed to his next of kin as intestate property.

On the 31st day of December, 1896, the settlor was engaged in the mercantile business of importing, buying and selling tailors' trimmings in the city of New York under the name of Brown, Draper & Co., he being the sole surviving partner and evidently having acquired the right to continue the use of the firm name. The respondent John Spohr was at that time, and had been for many years, the cashier and bookkeeper of the firm. Some three years previous to this time the settlor had caused a credit of $20,000 to be transferred from the loan account on the books of his firm showing the firm's indebtedness to him for moneys advanced or profits apart from his contribution to the capital to the credit of his niece, the respondent Marion Smith. Interest was added to this account annually thereafter and she from time to time received various sums of money from the firm which were charged on the debit side of the account. The balance in her favor on December 31, 1896, as shown by the firm books, was $21,620.37. On that day the settlor drew a check to her order for $10,000, and at his instance Spohr accompanied her to the bank and introduced her to some of the bank officials, saying to them that she wanted to draw the money on the check, but that he would " turn right around and deposit it to the credit of the firm." She drew the money, turned it over to

Spohr and he deposited it to the credit of the firm. This was charged to her account. A new account was then opened on the firm books in the name of John Spohr and A. B. Potterton, trustees, and under date of January 2, 1897 — the first business day after the transaction at the bank — they were credited with a cash item of $10,000. On January 7, 1897, the settlor drew another check for $10,000 to the order of Marion Smith, and the same formalities were repeated by the same parties and the trustees were credited on the firm books with this amount the following day. The amount of this check was also charged to her, and on the 8th day of January, 1897, the balance of account standing to her credit, $1,620.37, was transferred to the settlor's loan account, thus closing the original account with her. The settlor also executed a deed of trust, dated the day the first check was given to her, which recited a present delivery of $20,000 to said Spohr and Potterton in trust for purposes, so far as material to these issues, as follows: (1) To lend the same to said firm upon demand notes of the firm, bearing interest at five per cent, payable quarterly; (2) to demand payment of the notes at the death of the settlor, or sooner, in their discretion, and to loan the proceeds upon bonds secured by mortgages on improved and unincumbered property, as therein provided; (3) to pay the interest in quarterly installments to said Marion Smith during her life, and (4), if he survived her, to wind up the trust and pay the money over to him, and if she survived him, then on her death to pay the income to his nephew, J. Granville Smith, during life, and then to pay the principal to the appellant, provided, however, that if appellant were not then living the principal should go to two of the testator's daughters, or the survivor of them, and if neither should then be living, to another son, and if he were not then living, then to the Chapin Home for the Aged and Infirm of the City of New York. The instrument also provided that in the event of the death or removal of one trustee an appointment to fill the vacancy should be made by the other; that the settlor should have full power to revoke or change the terms of the trust, and that the beneficiaries were to receive the benefits of it as proceeding solely from his bounty. Two demand notes for $10,000 each, payable to the order of the trustees, bearing interest at five per cent, payable quarterly and dated the 2d and 7th

First Department, November Term, 1903.          [Vol. 87.

days of January, 1897, respectively, being the dates on which the money was received by the firm and credited to the trustees, were signed by the settlor in his firm name and pinned to the deed of trust.

The trustees executed a declaration of trust bearing the same date as the deed of trust, wherein they acknowledged the receipt of the $20,000 in trust for the purposes therein specified, being the same as those contained in the deed, and expressly covenanted to observe and perform the trust. The deed and declaration were acknowledged on the 13th day of January, 1897, at which time the deed and notes were delivered to Spohr, who has ever since had them in his possession and under his control, and the declaration of trust was delivered to the settlor. The trustees did not pay the beneficiary interest upon the notes, but the interest was credited to her upon the firm books for the years 1897 to 1900, inclusive, and was paid to her by the firm in the fall of 1901. On the 4th day of October, 1901, the settlor executed and delivered to the trustees a formal modification of the deed of trust, providing (1) that the interest should be paid to himself during life, and if Marion Smith should predecease him, the trust should cease and the subject thereof be transferred to him; (2) that if she survived him the income should be paid to her for life and upon her death the trust should cease and the principal be paid to her issue, or, if she left no issue, to said Chapin Home, and in other respects he reaffirmed the trusts, but the right to revoke or modify it was again expressly reserved. The trustees at this time signed and delivered to the settlor a corresponding declaration accepting the trust. On the 1st day of January, 1901, the settlor admitted to his firm two new partners; but the finances of the new firm continued under his management. Between the 27th day of April and the 3d day of May, 1901, the settlor executed eight other deeds of trust of money aggregating $75,000, on substantially the same terms as the Marion Smith trust as thus modified, but different as to amount, as to trustees, or as to *cestui que* trust on the death of the settlor. In each of these cases the settlor drew the firm check to his own order, and Spohr took it to the bank by direction of the settlor and told the bank's officer that he wished to see the money, but would at once deposit it again. The money was exhibited to him and then passed to the receiving

teller and placed to the credit of the firm.    On the firm books the settlor was charged with the amount of these checks as paid on his loan account, and a new account was opened with the trustees, who were credited with the proceeds of the checks, as if the cash had been loaned by them to the firm; and notes were executed in the firm name by the settlor and pinned to the deeds of trust and delivered to the trustee who, in each case, executed a corresponding declaration of trust.    All of the transactions relating to each of these subsequent trusts took place on the same day.    The notes being first prepared in the morning, then the transaction had at the bank and in the afternoon the trustees coming in and the papers being executed and delivered and the entries made in the firm books.    At each time a check was drawn, as stated, there stood to his credit on his loan account with the firm, over and above his share of the capital which was contained in a separate capital account, more than the amount of the check.    Checks were drawn to the order of the respective trustees for the interest for 1901, and by them indorsed to the settlor, who in turn indorsed them to the firm and was credited therewith on his loan account with the firm.    A formal demand of payment of the notes was made of one of the surviving copartners, who acknowledged the obligations and promised payment as soon as the business would permit.    Spohr, who after the settlor's death transacted the firm's bank business under a power of attorney, subsequently, without consulting the members of the firm, drew and delivered a firm check to the order of the respective trustees for five per cent of the indebtedness and this was paid.    The firm acquiesced in this payment and has in no manner attempted to repudiate its liability upon the notes.    It does not appear that the firm was at any time insolvent, or that any rights of creditors are involved.

On the 29th day of May, 1897, the settlor made a will disinheriting his wife and children, other than the appellant, and assigned as a reason therefor that their conduct toward him for a long time past had been undutiful and disrespectful, and also that his wife had sufficient means to properly care for herself and the children.    After directing the payment of his debts and the erection of a monument and giving a legacy of $10,000 to his brother, and $10,000 to said Marion Smith, he gave the rest, residue and remainder of his prop-

erty to his executors in trust to pay the income thereof to the appellant during life with the remainder over to appellant's issue, provided that in the event of the death of appellant without issue, the income should be paid to said Marion Smith during life with remainder to her issue, and in the event of the death of both without issue, he gave the principal to certain charitable institutions therein named. He executed a codicil to his will on the 1st day of October, 1901, the purpose of which was to authorize and direct his executors to continue his capital in the firm, according to his agreement with his partner, until the expiration of the period specified in the articles of copartnership for the continuance of the firm business. On the 15th day of January, 1902, he executed another codicil giving Marion Smith charge and control of his remains and of the funeral services and burial and the selection of a monument and assigned as a reason for this action " the undutiful and disrespectful conduct of my said wife and children to me for a long time past, and that my said niece Marion Smith has devoted herself to my comfort and happiness for several years past and is better informed of my wishes and desires regarding the disposition of my remains after my death and of the character of the monument I desire erected." The will, with the codicils, was duly admitted to probate. The settlor's next of kin and heirs, all beneficiaries under the will and all of the trustees and beneficiaries of these trusts are parties to this action.

*Frederic R. Kellogg,* for the appellant.

*Adrian H. Joline,* for the respondents Spohr and others as trustees.

LAUGHLIN, J.:

The appellant contends that each of these trusts is invalid, *first,* because the subject-matter was not identified in such manner at the time it was created that the legal title could or did pass to the trustees; *second,* because there was no adequate delivery of the subject-matter; *third,* because the promissory notes had neither legal inception nor sufficient consideration to support them, and, *fourth,* because there was no intent to create a trust which should become legally operative during the settlor's life and that his intention was to make a testamentary disposition of the property which would not be subject to a will contest.

There are four essential elements of a valid trust of personal property : (1) A designated beneficiary ; (2) designated trustee, who must not be the beneficiary ; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee, and (4) the actual delivery of the fund or other property or of a legal assignment thereto to the trustee with the intention of passing legal title thereto to him as trustee. (*Martin* v. *Funk,* 75 N. Y. 134 ; *Matson* v. *Abbey,* 70 Hun, 475 ; *Greene* v. *Greene,* 125 N. Y. 506 ; *Young* v. *Young,* 80 id. 422 ; *Sullivan* v. *Sullivan,* 161 id. 554.) We are of opinion that the facts stated show the existence of each of these elements with respect to each of the several trusts attempted to be created. In the Marion Smith trust there was an actual delivery of the money to one of the trustees. This was none the less a delivery on account of the fact that the check was payable to her and she turned the money over to the trustee. It clearly appears from the actual transaction and from the declaration of trust that this was considered and intended as a delivery of $20,000 by the settlor to the trustees in trust, among other things, to loan the money to the firm of which the settlor was the sole member. He recognized the loan as from the trustees by crediting them with the amount thereof upon his books and delivering to them the firm notes therefor. It is immaterial that the money was not all advanced on the same day or on the day of the execution of the trust deed. It all constituted one continuous transaction treated and recognized by the parties as if it occurred at the time of the execution and delivery of the trust deed and the declaration accepting the same ; and, certainly, as against the next of kin of the settlor as such, it must be given the same force and effect as if the checks were drawn, the money delivered, loaned back and the notes taken at the precise moment of time that the deed of trust became operative.

At the time of creating the other trusts it is doubtless true that the settlor could not have maintained an action against his firm for the moneys standing to his credit on the firm books ; but on the facts here presented he had the right, as against his copartners, to withdraw from the firm business the amount standing to his credit on the loan account. They do not appear to have objected to this course, and we fail to see how any one, other than the creditors of

the firm, can be heard to complain. It was the intention of the settlor to withdraw from the firm for the purpose of creating these respective trusts the amount of the respective checks. He did not formally deliver the money to the trustees, but he intended that the action taken at the bank by Spohr should constitute a delivery. The trust deeds recited the delivery of the money and the trustees acknowledged its receipt. The firm by crediting the trustees with the proceeds of the checks and issuing its notes acknowledged the loan as from the trustees. In each instance the firm's indebtedness to the settlor was canceled and released by the amount of the trust fund and a new obligation incurred by the firm for a like amount to the trustees. The transactions were not illegal and no one appears to have been prejudiced thereby. There was no mistake or fraud. There was full and adequate consideration for the notes. The legal title thereto is in the trustees, and payment thereof, even if resisted, which it is not, could be enforced by them.

Neither the reservation of the power of revocation or modification nor the recital that the beneficiaries received the benefits of the trust solely through the bounty of the settlor rendered the trusts illegal. (*Von Cott* v. *Prentice*, 104 N. Y. 45; *Von Hesse* v. *MacKaye*, 136 id. 114.) The settlor under this reserved power undoubtedly could have revoked the trust; but he did not do so, and, therefore, the reservation of the power of revocation or modification becomes immaterial. In the deeds of trust, other than that for the benefit of Marion Smith, which are in form an indenture between the settlor and two trustees named, after reciting that the trustees are to loan the money to the firm on six per cent note or notes, the interest payable semi-annually, the deed contains the following clause : " And upon the decease of the said Joseph H. Brown (or before his decease should we in our discretion see fit so to do) to demand payment of said note or notes." The appellant contends that in view of this clause the trustees were not authorized without the consent of the settlor to collect the notes during his life. The deed of trust in each instance was signed by the settlor only; and the acknowledgment of the receipt of the money and declaration of the trust for which it was received, following the language of the deed of trust in each instance, executed simultaneously therewith, was signed only by the trustees. We think the proper construction

of the trust deed is that the trustees were to be at liberty in their discretion, without consulting the settlor's wishes and even against his protest, to enforce the payment of the notes at any time.

Lastly, it is contended that these trusts constitute a testamentary disposition of the property in violation of the Statute of Wills, and stress is laid on the provisions of the will showing the feeling of the settlor toward his family. It is also pointed out that through the reserved power of revocation the testator could and it is claimed that he would have prevented the trustees from collecting the notes during his lifetime. This may be so, but it cannot be definitely affirmed. The firm having remained solvent, there was no occasion for the trustees to call in the loan. If they had had reason to believe that the investment was insecure it would have been their duty to collect the notes. Whether he would in that event have revoked the trusts is a matter of speculation. The Court of Appeals having decided in *Van Cott* v. *Prentice* (*supra*) not only that the reservation of the power of revocation or modification, but an express provision that the trustee shall hold the fund subject to the direction and control of the settlor does not invalidate a trust of personal property, it follows, we think, logically that these trusts are valid. Here the legal title to the notes was in the trustees. If they attempted to collect the notes he could have revoked the trusts, but he could have revoked them at will whether they attempted to collect the notes or not. Until they were revoked, the legal title to the property was in the trustees and the beneficiaries had a present interest therein during his life. In these circumstances it will not do to attempt to spell out an intention on the part of the settlor to exercise the power of revocation to prevent the beneficiaries receiving any actual beneficial interest in the trusts during his life. (See *Von Hesse* v. *MacKaye, supra.*) As between the beneficiaries and his next of kin or heirs, the trust, being legal in form and for purposes not forbidden by law, should be given force and effect.

It follows, therefore, that the judgment should be affirmed, with one bill of costs to the respondents.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred.

Judgment affirmed, with one bill of costs to respondents.