JOSHUA A. M. VAN COTT, Appellant and Respondent v.
John Prentice et al., as Executors, etc., Appellants and
Respondents.

P., by an instrument termed by him therein his deed of trust, and by
letters of instruction referred to therein, transferred to plaintiff certain
securities and funds, in trust, to invest and collect the income thereon
during the life of P. to pay over the income to K., to be by him appro-
priated for the use of four beneficiaries named, and at the death of P.
the principal to be disposed in accordance with instructions contained
in a writing sealed up and delivered with the instrument, with directions
that it should not be opened until such death. A full power of revoca
tion was reserved, and it was provided, as a condition of the grant, that the
beneficiaries should " have no legal or equitable right to the principal
or income," that the trustee should hold, subject to the grantor's direc-
tion and control, until his death ; it was also declared that if any
attempt should be made to interfere with the execution of the trust, or
to claim the securities contrary to the conditions of the instrument that
the trust should at once cease and determine. In an action to recover
possession of the securities which had come into the hands of defendants,
the executors of the will of P., *held* that a valid trust was fully and com
pletely constituted, and as the same was not revoked by the settlor during
his life the trustee was entitled to the possession of the trust property ,
that it was immaterial that the grant was voluntary and without consid
eration; that the declaration that the beneficiaries should have no legal or
equitable right was not intended as a denial of an equitable right to
enforce the trust as against the trustee while the settlement remained
unrevoked, but only as a denial of any right as against the settlor; also
that the validity of the title of the trustee was not affected by the fact
that he held subject to the control and direction of P.; that while the
trust continued and existed only at the will of the settlor it was good
and effectual until revoked.
By the sealed instructions it was provided that the income should, after
the death of P., be devoted to the use of the four beneficiaries named,
or the survivors or survivor in specified proportions the principal to be
paid to them " or survivor or survivors " in the same proportions, when
the youngest shall come of age. *Held*, that the survivorship referred to
was that existing at the death of the settlor, and so that the absolute
ownership was suspended only during the continuance of two lives at
most, both of which were in being when the trust was created.
(*Hawley* v *James*, 16 Wend. 61, distinguished.)
It was claimed that the sealed paper was testamentary in its character,
and so not legally executed. *Held*, untenable; that it was a component

part of the declaration of trust and spoke from its date, and the property then became vested in the trustee; that the result was not affected by the ignorance of the trustee or the beneficiaries of the contents of the paper until the death of P., as it was not essential that the trustee should know the contents in advance of the time when they were to guide his action, and he having accepted the trust with full knowledge that he was to learn of the ultimate disposition of the trust fund only at that time, and the beneficiaries, when the terms of the trust were disclosed, having claimed its benefit, this was sufficient.

The action was brought against defendants, as executors of P., and the complaint sought to charge them only in that capacity. After the trial an order was granted amending the summons and complaint and directing the judgment awarded to be entered against the defendants, individually and *de bonis propriis*. *Held*, that the order was properly reversed by the General Term ; that the amendment substituted a new and different cause of action, which the defendants as individuals had had no opportunity to defend.

(Argued October 20, 1886 ; decided January 18, 1887.)

APPEAL by defendants from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 9, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court; also appeal by plaintiff from so much of said order as reversed an order of Special Term permitting an amendment of the summons and complaint. (Reported below, 35 Hun, 317.)

This action was brought against defendants as executors of the will of John H. Prentice, deceased, to recover possession of certain securities which came to the hands of defendant, but to which plaintiff claimed title as trustee under certain instruments in writing executed by said Prentice, March 4, 1871.

These instruments were delivered to the plaintiff at or about their date. Two of them were executed under seal the other, referred to in one of the sealed instruments as "confidential written instructions," was not under seal. The sealed instruments were attached to the complaint, marked schedule A and B. Of the body of schedule A the following is a copy :
"For good and sufficient consideration the said Prentice hereby grants and assigns to the said Joshua M. Van Cott the securi-

ties enumerated in schedule A, hereto subjoined, upon the trusts hereinafter more fully set forth, to wit:

" *First.*—To collect and receive the sums due and to become due thereon for principal and interest, and to discharge the same respectively as paid.

" *Second.*—From time to time to invest and reinvest the sums received thereon for principal in good bonds and mortgages or in public securities, subject to my direction or approval.

" *Third.*—To pay over the interest from time to time received on such securities or investments and reinvestments to Clarence King of New Haven, in the State of Connecticut, or to such other person or persons as I shall from time to time direct—the said King having no title to or beneficial interest in said payments; and the said King shall pay over said interest as received to the person, and for the uses specified in confidential written instructions bearing even date herewith, signed in duplicate, and to be delivered to the said Van Cott and the said King. And it is hereby declared and made a condition of these trusts that the beneficiaries thereof have no legal or equitable right to the principal or income of said securities or investments, but receive the same only as herein provided as proceeding solely from the bounty of said Prentice, and subject to his power to revoke the trusts hereby created.

" *Fifth.*—The said Joshua M. Van Cott shall hold the principal sums represented by the said securities and investments and reinvestments subject to the directions of the said Prentice contained in a private and confidential paper bearing even date herewith, delivered to him in a sealed envelope, to be opened by him at my death, if he shall survive me; subject, in the meanwhile, to my direction and pleasure, and to be returned to me in the event of my surviving him; and abso·lutely subject to my direction and control until the event of my death.

" *Sixth.*—In the event that the said Clarence King, or that the said beneficiaries, or that any person or persons whatever,

shall by any suit or proceeding at law or in equity interfere with the execution of the trusts herein declared, or make any claim against the said Prentice or the said Van Cott to the said securities or investments or reinvestments or the income thereof, contrary to the provisions or conditions of the said trusts, then and thenceforth the said trusts shall cease, determine and become wholly void, and the said securities investments and reinvestments, with all the interest, income and increase thereof, shall thenceforth belong wholly to me, discharged of said trusts."

The " confidential written instructions," referred to in the third clause, were embodied in the unsealed instrument which directed said Clarence King to pay the interest received from plaintiff, as provided for in said clause, " to Mrs. Florence K. Howland (widow of the late George Howland) for the use of Mrs. Howland, to the extent of one-third part thereof, and of the three children of the said George Howland to the extent of the remaining two-thirds part thereof." A duplicate of these instructions was delivered to Mr. King at or about its date. Schedule B was the " private and confidential paper " referred to in the fifth clause. This was retained by plaintiff, as directed, and opened after the death of Mr. Prentice, which occurred in 1881. Of the material portion thereof the following is a copy : " And I now direct that unless I shall otherwise provide in my lifetime or by testamentary disposition, the said trustee shall, after my death, devote any further income from the said securities or the reinvestment thereof to the use of the said Mrs. Howland and three children—one-third to her and the residue equally to the said children or the survivors or survivor of them; and the principal of said securities, or the reinvestments thereof, shall be delivered to the said persons or survivor or survivors in the same proportions when the youngest of said surviving children shall come of age, unless in the exercise of his discretion he shall sooner make such distribution of said principal." The trust was in no manner revoked by the settlor during his life. Further facts appear in the opinion.

*Joshua M. Van Cott* plaintiff in person.    A trust is executed when it has the elements of a competent trustee, a defined trust estate, and a sufficient declaration of the objects and purposes of the trust, as in this case.    It is executory only when some element of an executed trust needs to be supplied with the aid of a court of equity.  (4 Kent's. Com. 305, 336, 337; Hill on Trust. 82, 83, 130, 133, 134; Perry on Trusts, § 359; Williams on Pers. Prop. 215; *Young* v. *Young*, 80 N. Y. 442; *Martin* v. *Funk*, 75 id. 134; *Boone* v. *Savings Bank*, 84 id. 83; 1 Lead. Cas. in Eq. 17, 28; *Stone* v. *Hackett*, 12 Gray, 227; *Davis* v. *Ney*, 125 Mass. 590; *Melroy* v. *Lord*, 4 De. G., F. & J. 274; *Adams* v. *Adams*, 12 Wall. 185; *Morse* v. *Morse*, 85 N. Y. 53, 59, 60; *Gilman* v. *McArdle*, 99 id. 451; *Mabie* v. *Bailey*, 95 id. 206; *Willis* v. *Smyth*, 91 id. 297; *In re Diez*, 50 id. 88, 93.)    A power reserved to revoke, and a provision that the trust shall determine upon the happening of specified contingencies, do not affect the nature or validity of the trust while it continues.    (1 R. S. 733, 735, §§ 86, 105, 108; *Belmont* v. *O'Brien*, 12 N. Y. 394, 404; *Rosenburg* v. *Rosenburg*, 40 Hun, 91.)    As the power to revoke was never exercised, and neither contingency that might have *ipso facto* determined the trust . ever happened, they may be eliminated, and regarded as if not provided for in the trust deed.    (Perry on Trusts, § 104; *Barlow* v. *Loomis*, 19 Fed. R. 677.)    The trust does not violate the statute against perpetuities.    (1 R. S. 773, § 1; *Manice* v. *Manice*, 43 N. Y. 385; *Tiers* v. *Tiers*, 98 id. 568; *Benedict* v. *Webb*, id. 460; *Radley* v. *Kuhn*, 97 id. 26; *Van Schuyver* v. *Mulford*, 59 id. 426; *Kiah* v. *Grenier*, 56 id. 220; *Savage* v. *Burnham*, 17 id. 561; *Harrison* v. *Harrison*, 36 id. 543; *Woodgate* v. *Fleet*, 64 id. 566; *Provost* v. *Provost*, 70 id. 141; *Schelter* v. *Smith*, 41 id. 328; *Gordier* v. *Johnson*, L. R. Ch. Div. 441; *Adams* v. *Perry*, 43 N. Y. 487.)    The interests taken by the donees at the settlor's death being vested and not liable to go over, were alienable.  (*Hawes* v. *Van Orden*, 84 N. Y. 270; *Tucker* v. *Bishop*, 16 id. 402, 406.)    The judgment was properly *de bonis propriis*, as no

ground was alleged or proved for a judgment *de bonis testatoris.* (*Ferrin* v. *Myrick*, 41 N. Y. 315 ; *Patterson* v. *Patterson*, 59 id. 574; *Smith* v. *Mack*, 15 The Rep. 74 ; *Taylor v. Davis*, 110 U. S. 330; *De Valengius* v. *Duffy*, 14 Peters, 282 ; *Austin* v. *Monroe*, 49 N. Y. 360, 366 ; *Schmittler* v. *Simon*, 101 id. 554.) The nature of the action is determined by the body and substance of the complaint. (*Comes* v. *Harris*, 1 N. Y. 223 ; *Austin* v. *Monro*, 47 id. 360 ; *Wetmore* v. *Porter*, 92 id. 82, 83 ; *Merritt* v. *Seaman*, 6 id. 168 ; *Beers* v. *Shannon*, 73 id. 297; *Brown* v. *Knapp*, 79 id. 137 ; Addison on Torts, 938, § 1318 [Last Am. ed.].) It was proper to regard the use of the word " as " in the title of the complaint as a clerical error, and to correct it by amendment. (Code, § 723 ; *Reeder* v. *Sayre*, 70 N. Y. 492; *Thomas* v. *Nelson*, 69 id. 118 ; *Harris* v. *Turnbridge*, 83 id. 92 ; *Railroad Co.* v. *Henry*, 17 Fed. Rep. 416 ; *Thompson* v. *Strauss*, 16 Week. Dig. 503.)

*Aaron J. Vanderpoel* for defendants. The title to the securities remained in the testator until the time of his death, and passed to defendants, as his executors, to be disposed of according to his will. (*Young* v. *Young*, 80 N. Y. 437 ; Fry on Spec. Perf. [3d ed.] § 92 ; *Warriner* v. *Rogers*, L. R. 16 Eq. Cas. 340 ; *Richards* v. *Delbridge*, L. R. 18 Eq. 11, 13 ; *Shurtliffe* v. *Francis*, 118 Mass. 154 ; *Hall* v. *Hall*, L. R. 14 Eq. Cas. 365.) Treated as a gift the transaction was incomplete and invalid. (*Young* v. *Young*, 80 N. Y. 422 ; *Little* v. *Willetts*, 37 How. Pr. 481, 493 ; *Meiggs* v. *Meiggs*, 15 Hun, 453, 458 ; *Fisher* v. *Hall*, 41 N. Y. 416 ; *Bryant* v. *Brant*, 42 id. 11 ; *Heartly* v. *Nicholson*, L. R. 19 Eq. 233.) To create a valid voluntary trust in a third person capable of enforcement, especially in favor of one not of kin, it is necessary that the settlor should have parted with all dominion and control over the subject of the trust and done everything essential to pass the title thereto to the trustee. (*Martin* v. *Funk*, 75 N. Y. 134 ; *Young* v. *Young*, 80 id. 422 ; *Jackson* v. *Twenty-third St. R. Co.*, 88 id. 520 ; *Meiggs* v. *Meiggs*, 15

Hun, 453; *Harrison* v. *McMennomey*, 2 Edw. Ch. 251; *Bulbeck* v. *Silvester*, 48 L. J. [N. S.] Ch. 280; *Milroy* v. *Lord*, 31 L. J. Eq. 449; *Hughes* v. *Stubbs*, 1 Hare, 476; *West* v. *West.* 9 L. R. Ir. 121.) There is no substantial difference in principle between a gift and a voluntary trust. The latter is no less a gift than the former. The one is direct to the beneficiary, the other through the intervention of a trustee, and the principles applicable in the one case are equally applicable in the other. (*Young* v. *Young*, 80 N. Y. 422; *Martin* v. *Funk*, 75 id. 134; *Curry* v. *Powers*, 70 id. 212; *Trow* v. *Shannon*, 78 id. 446; *Doty* v. *Wilson*, 47 id. 580; 2 Schouler on Pers. Prop. 118; *Vass* v. *Hicks*, 3 Murphy [N. C.], 494; *Sutton* v. *Hallowell*, 2 Dev. 186; *Lance* v. *Lance*, 5 Jones L. R. 413; *Trow* v. *Shannon*, 78 N. Y. 446; *Acker* v. *Phœnix*, 4 Paige, 305; *West* v. *West*, 9 L. R. Ir. 121.) The disposition of the securities to take effect on the death of Mr. Prentice was of a testamentary character. (Perry on Trusts, 92, 93; *Vandenberg* v. *Palmer*, 4 Kay & J. 216; *Shurtliffe* v. *Frances*, 118 Mass. 154; *Frederick's Appeal*, 52 Penn. 388; *Hughes* v. *Stubbs*, 1 Hare Ch. R. 476.) The alleged trust contained in the secret papers was void under the statute. The absolute ownership of the property was suspended for a longer period than during the continuance, and until the termination of more than two lives in being at the date of the instrument. (1 R. S. 733, §§ 1, 2; *Livingston* v. *Gordon*, 84 N. Y. 136; *Hawley* v. *James*, 16 Wend. 60; *Levi* v. *Hall*, 54 Barb. 248, 260; *McSorley* v. *Leary*, 4 Sand. Ch. 414; *Knox* v. *Jones*, 47 N. Y. 389; *Colton* v. *Fox*, 67 id. 348; *Schettler* v. *Smith*, 41 id. 328.) The property in question having come into the hands of the defendants as executors and without any wrongful act on their part, a demand is necessary in order to maintain an action of replevin. (*Sylvester* v. *Williams*, 37 How. 109; *Talcott* v. *Belding*, 46 id. 419; *Howell* v. *Kroose*, 4 E. D. Smith, 357; 1 Wait's Pr. 124; *Wheeler* v. *Allen*, 51 N. Y. 37.) The words "as executors" characterize the action and are not words of description. (*Austin* v. *Monroe*, 47 N. Y. 360.)

FINCH, J.   The objection that the trust here sought to be enforced was voluntary and without consideration has no weight, if it was, in fact, fully and completely constituted. (*Young* v. *Young*, 80 N. Y. 422, 437 ; *Jones* v. *Lock*, L. R. 1 Ch. 25.)   By what the grantor denominated his deed of trust he transferred to the trustee named and appointed in the instrument, the securities and funds now in question, directing the income, during his life, to be paid to Clarence King, to be by him appropriated to the use of Mrs. Howland and her three daughters in specified proportions, and at his death the principal to be disposed of in accordance with sealed instructions therewith delivered, but not to be opened till that event. A full power of revocation was reserved, and it was provided as a condition of the grant that the beneficiaries should have no legal or equitable right to the principal or income ; that the trustee should hold subject to the grantor's direction and control until the event of his death ; and that if any attempt should be made to interfere with the execution of the trust, or to claim the securities contrary to the conditions imposed, then the trust should at once cease and determine.

Neither the power of revocation nor the provisions determining the trust in the event of a legal interference, or the death of the trustee in the life of the settlor, are in the least inconsistent with the trust as completely and perfectly constituted.   They both assume its separate and effective existence, and provide merely for its termination upon the happening of specified contingent events.   But attention is called to the clauses in the deed which require the trustee to hold and manage the fund subject to the direction and control of the settlor, and deny to the beneficiaries any legal or equitable right to either principal or interest.   The latter provision is plainly but an amplification of the idea involved in the power of revocation, for the grantor adds that the beneficiaries shall take what they receive as proceeding from his bounty and subject to his right to revoke at any moment.   It is made by the statute an element of such a trust, when the subject is real estate, that the beneficiaries shall take no estate or interest

in the lands, but may simply enforce the trust in equity.
(1 R. S., 727, § 60.) The beneficiaries in the present trust
must have such equitable right, but measured and limited by
the lawful terms and conditions of the deed; and when, there-
fore, it was provided that they should "have no legal or
equitable right to the principal or income" of the transferred
securities, the clause unexplained might seem to some minds
a denial of the equitable right to enforce the trust, and so
inconsistent with its necessary and essential qualities as such.
But that equitable right of enforcement is not in terms denied,
and the language withholding a right in the fund is not
stronger than that of the statute when it denies a right to the
land and vests the whole legal and equitable estate in the
trustee. We ought not to put the creator of this trust in the
attitude of deliberately nullifying his own evident purpose.
That he meant to create an effective trust is beyond all
question, and a construction which makes him destroy in the
very effort to create, should not prevail if there be any other
rational interpretation. He gives us his own explanation.
After saying what right the beneficiaries shall not have, he
specifies what right they *shall* have in the phrase, "but
receive the same only as herein provided as proceeding solely
from the bounty of said Prentice, and subject to his power to
revoke *the trusts hereby created.*" Since he intended to
create an effective trust, and declared that he had done so,
and delivered the possession and passed the title of the fund
to the selected trustee, we are bound to understand his denial
of an equitable right to the beneficiaries as meaning only to
emphasize his own control flowing from the voluntary
character of his act and his reserved power of revocation; as
a supposed and actual result of his own right to end his
bounty at any moment; and not as a denial of the right of
the beneficiaries to enforce the trust, as against the trustee,
while it should remain in existence, and the settlor, with-
holding his power of revocation, should permit it to stand.
His meaning undoubtedly was, that as against himself and his
own freedom of action, the beneficiaries should possess no

legal or equitable right, and not that as against the trustee, while the settlement stood unrevoked, there should be no equitable recourse. I think that the phraseology in which the settlor forbids an interference with the trust confirms that construction. The language of the deed is: " In the event that the said Clarence King, or that the said beneficiaries, or that any person or persons whatever, shall, by any suit or proceeding at law or in equity, interfere with the *execution* of the trusts herein declared, or make any claim against the said Prentice or the said Van Cott to the said securities or investments or reinvestments or the income thereof *contrary* to the provisions or conditions of the said trusts, then " the trusts shall cease and determine. The motive of this provision, doubtless, was a fear that some creditor of Howland might attack the trust fund as being in truth a debt due him paid to his wife and children; and that fear explains the reiteration by the settlor of the idea that the fund came wholly from his bounty, and was purely voluntary. But what he guards against in the clause quoted is an outside interference preventing the *execution* of the trust, and a suit, legal or equitable, to enforce a claim *contrary* to its provisions, and this for the benefit and protection of the beneficiaries. A suit by them against the trustee to enforce the trust according to its terms, he does *not* forbid. I am therefore quite strongly of opinion that a just construction of the trust deed did not prevent its enforcement by the beneficiaries according to its terms.

What has just been said is also quite applicable to the other provisions which have been the subject of comment and which require that the trustees shall hold the fund subject to the direction and control of the settlor until his death. That language only repeats in another form the effect of the reserved power of revocation. The existence of that inevitably leaves in the settlor an absolute control, since at any moment he may end the trust and resume possession of the fund as his own. The trustee is directed to hold the fund and invest and reinvest and pay over as ordered, but is to do all this *subject* to the settlor's absolute control. This cannot mean that the trustee

is to have no title and the trust no effective existence, and the property remain the settlor's, but that the trust and the title, good and effectual while it stands, is, nevertheless, to continue and exist only at the will and pleasure of the settlor. Its continued existence was to be absolutely subject to the direction and control of Prentice, a result always inevitable where a power of revocation is reserved. We discover nothing in the provisions of the deed, properly construed, inconsistent with a completely constituted trust, wholly voluntary and benevolent, and subject to revocation by the settlor at any moment; a kind of trust of which the books furnish many instances, and which, indeed, are sometimes subject to doubt and suspicion if the power of revocation is absent.

But other questions argued grow out of the sealed and confidential paper to be opened only on the settlor's death, and which, when opened, disclosed the final disposition to be made of the trust fund. It is said, first, that the paper was testamentary in its character, and so not legally executed. The contention compels a view of the instruments delivered, which is unsound in several particulars. It assumes what is not true, that the title to the securities constituting the trust fund was never vested in the trustee, but the property was the settlor's at the moment of his death, and that the sealed paper alone, and by itself, is to be the subject of consideration, and took effect solely at the death of the signer. The three papers executed and delivered together, and at the same time, constituted the trust deed, and cannot be separated in determining their effect. The sealed paper was a component part of the declaration of trust, and spoke from that date. If it had been open and its contents disclosed, there would have been no doubt that a trust was created whose duration extended beyond the death of the settlor, and depended in part upon the contingency of that death ; but the instrument would not thereby have become testamentary. The result is not changed by the ignorance of the trustee as to the contents of the paper. It was not necessary to his duty that he should know those contents in advance of the time when they were to guide his action.

It is not at all uncommon that trustees are ignorant of the persons who are to be beneficiaries by reason of contingencies which only the future can develop. The trustee accepted this trust with full knowledge that he was to learn the contents of the sealed paper only at the settlor's death, and has steadily and continually performed the duties of the trust from the date of its creation in accordance with its terms. It is immaterial that the beneficiaries were ignorant of the trust for their benefit until disclosed at the death of Prentice. (*Cumberland* v. *Codrington*, 3 John Ch. 261; *Shepherd* v. *McIvers*, 4 id. 137.) It is sufficient that when disclosed they claim its benefit. The trustee knew when he took the sealed paper, because he was told, that it contained an ultimate disposition of the trust securities. His ignorance was confined to the character and objects of that disposition, and that only durin a period when the knowledge was unnecessary. He *could* as he *did* accept the trust, and obedience to its terms was entirely possible, since he was permitted to know them all in ample time for his necessary action.

But when the paper was opened at the death of the settlor, the disposition made was found to be of a character to raise another question which has been quite earnestly debated. The appellant contends that the trust created was void because contrary to the statute against perpetuities. It first devotes at the settlor's death any further income accruing "to the use of Mrs. Howland and her three children, one-third to her and the residue equally to the said children or the survivors or survivor of them," and the principal is directed to be " delivered to the said persons or survivor or survivors in the same proportions when the youngest of said surviving children shall come of legal age, unless in the exercise of his discretion he (the trustee) shall sooner make such distribution of said principal." We are of opinion that the survivorship thus referred to is that existing at the date of the death of the settlor, and that the consequent duration of the trust is during the life of the settlor and the minority of the youngest of the three children living at his death, and so the absolute ownership is suspended only

during the continuance of those two lives at the most, both of which were in being when the trust was created.    It is claimed that the language used is nearly identical with that passed upon in *Hawley* v. *James* (16 Wend. 61), but the difference is very marked and clear.    There the suspension was not until the youngest of the grandchildren should attain the age of twenty-one years, but until the youngest of those who attained that age should reach it, and it was well suggested that the trust might continue during thirteen minorities by reason of deaths occurring before the prescribed age was attained.    That vicious element is not present in the limitation before us.    The deaths of any of the three children of Mrs. Howland during the life of the settlor, had such occurred, would have been immaterial, as his own and not theirs was one life measuring the duration of the trust, and at its termination the life or minority of the youngest of the three then living is the only other life bounding such duration.    So far, therefore, as the defendants' appeal is concerned, we discover no error, and the judgment should be affirmed, with costs.

But the plaintiff also appeals from an order of the General Term reversing an order of the Special Term permitting an amendment of the summons and complaint.    The action was brought against the defendants in their representative capacity as executors of Prentice.    The summons and complaint were so entitled, the use of the word "as" indicating that intention. The complaint alleged that the defendants held the property in their representative capacity, which the latter admitted, and the issue presented by the pleadings was whether the executors had title or the trustee.    The complaint conceded that the defendants asserted no other title or claim.    After the trial a motion was made and granted amending the summons and complaint and ordering the judgment awarded to be entered against the defendants, individually and *de bonis propriis*    On appeal, the General Term reversed the order, and, we think, correctly. The amendment substituted a new and different cause of action, and the defendants as individuals had been furnished with no opportunity to defend.

The order appealed from by the plaintiff should be affirmed with costs.

All concur, except Rapallo and Earl, JJ., not voting. Judgment and order affirmed.