THE SCHENECTADY TRUST COMPANY, as Trustee under Agreement Made by GEORGE E. EMMONS, Dated June 20, 1927, and Amendments Thereto, Respondent, *v.* NATHANIEL D. EMMONS, Also Known as DANIEL WESTBROOK, Appellant, and THE SECURITY FIRST NATIONAL BANK OF LOS ANGELES AT PASADENA, CALIFORNIA, as Trustee under Agreement Made by LAURENCE B. EMMONS, Dated April 19, 1939, and Others, Respondents.

Third Department, January 15, 1941.

*Leary & Fullerton* [*James A. Leary, Walter A. Fullerton* and *William A. Redden* of counsel], for the appellant.

*Strong & Golden* [*Ellis J. Staley* and *Rollin Browne* of counsel], for the plaintiff, respondent.

*Edmund B. Bellinger* [*Edmund B. Bellinger* of counsel], guardian *ad litem* for infant respondents Mary Helen Emmons and Elizabeth Bentley Emmons.

*Naylon, Maynard & Peters* [*Emil Peters* and *Frank S. Higgins* of counsel], for the respondent Security First National Bank of Los Angeles, Cal.

*Chatfield T. Bates*, for the respondent Old Ladies' Home of Schenectady, N. Y.

*Walter S. McNab*, for the respondent Children's Home Society of Schenectady, N. Y.

HILL, P. J. This suit is brought by the trustee named in a trust agreement of which the decedent George E. Emmons is the settlor, for a judgment approving its accounts, and for a determination as to the rights, shares and interests of the parties in the property comprising the trust fund. The original trust agreement was made June 20, 1927, and thereafter on April 21, 1937, it was amended and changed by the substitution of a new agreement. The appellant is Nathaniel D. Emmons, whose father, George L. Emmons, a son of the settlor, died in 1918. The trust agreement contains alternative provisions conditioned upon whether the settlor or his son Laurence was the survivor. The settlor died in July, 1938, his son Laurence in April, 1939, the latter leaving him surviving two children, Elizabeth born in 1928 and Mary born in 1924. Under the trust agreement, securities of substantial value were deposited with the trustee, over which the settlor during his life reserved considerable control. He also reserved the right to cancel the agreement and repossess the whole fund. The income was to be paid to the settlor during his life, and upon his death certain stocks and bonds were to be turned over to his son Laurence, also substantial sums were to be distributed among various relatives and friends. The remainder, together with any lapses in the legacies earlier mentioned, the trustee was directed

to hold during the lifetime of Laurence, paying him the income monthly. Upon his death, the remainder was to be divided into one hundred parts. Fifty thereof were bequeathed to collateral relatives and charitable corporations. The trust as to the remaining fifty one-hundredths was continued under the direction contained in the agreement:

"Fifty one-hundredths (50/100ths) parts thereof to The Schenectady Trust Company of Schenectady, N. Y., in trust, however, for the children of my said son, Laurence B. Emmons, or the survivor of them, living at the time of my death in equal shares. Such reasonable portion of the net income therefrom as may be necessary for their proper schooling, support and maintenance, in the sole opinion of their guardian, shall be paid to them or for their use and benefit from time to time in each year until they attain the age of twenty-one years at which time the undistributed income is to be paid to them and thereafter the full net annual income shall be paid to them from time to time in each year, share and share alike, during the Trust period. The principal of each child's portion of the Trust Estate, after deducting the Trustee's commissions and expenses, shall be distributed and paid to them or the survivor of them as follows:

"One-third (1/3rd) thereof when any such child reaches the age of 25 years.

"One-third (1/3rd) thereof when any such child reaches the age of 30 years.

"One-third (1/3rd) thereof when any such child reaches the age of 35 years."

The trust created in June, 1927, will continue as to a portion of the property until Elizabeth Emmons, born in 1928, is thirty-five years of age. It may be earlier terminated in part by the death of either Elizabeth or Mary, the issue taking the parent's share, and wholly terminated if both should die. If either died without issue, the surviving sister, or her issue, would take. The duration of the trust for these children is measured by the life of the settlor, the life of Laurence and the lives of Elizabeth and Mary up to their thirty-fifth year.

The contention of the appellant is that he, being the son of a deceased son of the settlor, is entitled to a distributive share of the now remaining trust fund, because the settlor died intestate in respect thereof, as the trust agreement is invalid, the absolute ownership being suspended for more than two lives. (Pers. Prop. Law, § 11.) The settlor died a resident of Los Angeles, Cal., leaving a last will and testament, in which it is stated that he did not purport to bequeath "the property which The Schenectady

Trust Company of Schenectady, New York, may be holding as Trustee under Trust Agreement made between us dated June 20th, 1927, and amendments thereto and which property so held is to be disposed of solely by said Trustee in accordance therewith."

Respondents argue that the life of the settlor should not be used in measuring the duration of the trust, as absolute ownership of the property was not suspended while he lived, he having reserved the right to "revoke, modify or alter the settlement hereby evidenced and the trust and any and all rights and interests hereby created or held hereunder, either in whole or in part" and to withdraw all of the property from the trustee. They further contend, however, that there was a valid assignment to the trustee, that it held title to the property and that the trust was not illusory.

The opposing theory is that a valid trust was not established as the settlor reserved such powers that their cumulative effect was to retain ownership and that the trustee was only an agent to carry out his directions, but if this be not true, then absolute ownership was suspended in violation of the Personal Property Law (*supra*) as actual delivery of property or the valid assignment thereof, with the intention to transfer the title from the settlor to the trustee, may not be accomplished without the suspension of the absolute ownership by the settlor; the theory of a valid transfer with absolute ownership remaining in the settlor being paradoxical, as a trust agreement cannot avoid both the whirlpool of illusoriness and the rock of absolute ownership.

It is not to be gainsaid that if absolute ownership was suspended during the lifetime of the settlor, the trust terminated with the death of Laurence, his being the second life, nor that one of the four elements of a trust is the actual delivery of the fund or property or a valid assignment thereof to the trustee with the intention of passing legal title to him as trustee. (*Brown* v. *Spohr*, 180 N. Y. 201.)

A power of revocation is consistent with a valid trust which continues unless and until the power is exercised. (*Van Cott* v. *Prentice*, 104 N. Y. 45, 54, 55; *Von Hesse* v. *MacKaye*, 136 id. 114; *Newman* v. *Dore*, 275 id. 371; *Rosenburg* v. *Rosenburg*, 40 Hun, 91; *Robb* v. *Washington & Jefferson College*, 103 App. Div. 327, 353.)

The authorities in this State which sustain the theory that the life of the settlor is not to be used in determining whether there is a suspension of absolute ownership beyond two lives in being are *United States Trust Co.* v. *Chauncey* (32 Misc. 358); *Equitable Trust Co.* v. *Pratt* (117 id. 708; affd., 206 App. Div. 689); *Irving Trust Co.* v. *Hartmann* (8 N. Y. Supp. [2d] 387). *Van Cott* v.

*Prentice* (*supra*) is not such an authority. Prentice transferred funds to a trustee reserving full control and the right to terminate the trust. He directed the income to be paid to King " to be by him appropriated to the use of Mrs. Howland and her three daughters in specified proportions, and at his death the principal to be disposed of in accordance with sealed instructions therewith delivered." The sealed instructions opened upon the death of the settlor directed that accrued income be paid to Mrs. Howland and her three children, " one-third to her and the residue equally to the said children or the survivors or survivor of them " and directed that the principal be " delivered to the said persons or survivor or survivors in the same proportions when the youngest of said surviving children shall come of legal age." The opinion (p. 57) speaks of the settlor's life as one that is to be considered in measuring the duration of the trust. *Robert* v. *Corning* (89 N. Y. 225) determines that when a trustee is empowered to sell land without restriction as to time, the trust does not suspend the power of alienation.

We are considering absolute ownership of personal property (Pers. Prop. Law, *supra*) as well as suspension of the power of alienation. The power granted to a trustee to change the form of investment with the written consent of the settlor had no bearing upon the suspension of absolute control. Unquestionably the settlor could have regained absolute ownership by terminating the trust. This he did not do, thus disclosing a final intention that the trust was to continue during his life, that of his son Laurence and until a girl now sixteen and another twelve, each attains the age of thirty-five years. The effect of the application of the doctrine that power of alienation is not suspended while there are persons in being who jointly may give a valid title, is exemplified by Chief Judge Cullen's reference to a theoretical trust for a thousand years (*Matter of Wilcox*, 194 N. Y. 288, 304, 305), with the trustee, the equitable life tenant and the person presumptively entitled to the next life estate, empowered to terminate the trust and transfer the estate. He asserts that under such a holding we have not abolished estates tail.

I do not find that the court of last resort has decided that the life of a settlor should not be used in determining whether the statute against suspension of absolute ownership has been violated under a trust agreement by the terms of which the settlor has the power, which he has not exercised, to terminate the trust during his lifetime. We are considering only one trust, although a main trust and a children's trust are spoken of, to describe different periods of time. A portion of the fund trusteed in 1927 is still

in the hands of the trustee, where it will remain, under the terms of the agreement, for more than twenty years hereafter. There is only one settlor, one trustee, one fund. A portion of the fund has been distributed, but that does not affect the part which is still held with the income payable to the two life beneficiaries. This trust extends beyond two lives. There are four measuring lives unless it be determined that because of the settlor's unexercised right of revocation his is to be excluded. Then there would be three lives, unless we construe the language to show an intent that upon Laurence's death the undistributed fund is to be held one-half for Mary and a like amount for Elizabeth, in separate trusts.

There can be no question that the settlor could have divided the trust fund remaining after Laurence's death into two equal shares, one to be held for the benefit of Mary until she was thirty-five years old, and the other for Elizabeth until she reached a like age. The language used permits debate as to whether he expressed such an intention. Fifty one-hundredths of the fund held in trust for Laurence, after taking out certain legacies, is to continue in the possession of the trust company " in trust, however, for the children of my said son * * * or the survivor of them, living at the time of my death in equal shares." There is illegality if that language indicates an intention to include a child or children of Laurence born after the date of the instrument which created the trust. Possibly, even if such an intention is to be drawn from the language, the illegal part may be separated from the legal. Assuming that the foregoing language had reference only to Laurence's two children living at the date of the trust agreement, does it follow that there was in fact a division so that two trusts were created, or is there only one, with two life beneficiaries? Had he provided that a twenty-five one-hundredths part was for the benefit of Mary, and a like amount for the benefit of Elizabeth, there would have been no question. The provision as to schooling, support and maintenance during the minority of the two girls seems to contemplate only one trust. " Such reasonable portion of the net income therefrom " seems to refer to a single fund, and it is to be applied " as may be necessary for their proper schooling, support and maintenance, in the sole opinion of their guardian." It is hardly to be assumed that each of the girls would need exactly the same amount. They were of different ages. One might require more medical attention or choose a more expensive education. Thus, until each becomes twenty-one years of age the income seems to be treated as an entity. The direction as to a distribution, share and share alike, applies to the time after they arrive at twenty-one. The settlor pro-

vided: " If any of the children of my said son shall die leaving lawful issue * * *." Had he substituted " either " for " any," the intent would have been plainer. However, near the end of the same sentence he does say that in the event one child has died, the share she represented " shall be given to the surviving child of my said son."

The general rule in this State is, that an unattested paper purporting to dispose of property at or after the death of the testator, cannot be taken as a part of a will, even though referred to in that instrument. (*Matter of Andrews*, 162 N. Y. 1; *Booth* v. *Baptist Church*, 126 id. 215, 247; *Matter of O'Neil*, 91 id. 523; *President and Directors of Manhattan Co.* v. *Janowitz*, 260 App. Div. 174.) It has been said that this rule is designed as a safeguard against fraud and mistake and may not be pressed to " a drily logical extreme " and that in the nature of things there must be exceptions to its apparent generality. (*Matter of Fowles*, 222 N. Y. 222.) *Matter of Rausch* (258 N. Y. 327) is another case of an exception to the generality of the rule. It involves incorporation of a trust agreement by reference. In the *Janowitz* case (*supra*) it was decided that an amendable trust agreement could not be incorporated by reference. While this issue is raised by counsel, the language of the California will does not show an intent to incorporate.

The logic opposed to the exclusion of the life of the settlor, who retains a power of revocation and does not exercise it, is more impressive to me than the opposite; however, the text writers and such authorities as there are in this State favor the exclusion. The division of the fund after the death of Laurence into two trusts is possible without doing too great violence to the expressed intention of the testator and thereby partial intestacy is avoided.

I favor an affirmance.

CRAPSER and FOSTER, JJ., concur; BLISS, J., concurs in the result; HEFFERNAN, J., dissents.

Judgment and order affirmed, with costs to all parties filing briefs, payable out of the trust fund.