CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Successor by Consolidation to EQUITABLE TRUST COMPANY OF NEW YORK, as Trustee, Plaintiff, *v.* VERNER Z. REED, JR., et al., Defendants.

Supreme Court, Special Term, New York County, October 14, 1946.

*Thomas A. Ryan* for plaintiff.

*Gerard T. Shevlin* and *Joseph W. Drake* for Verner Z. Reed, Jr., defendant.

*Franklin E. Parker, Jr.,* and *Frank A. Zunino* for Joseph Verner Reed, defendant.

*William D. H. Stanley* for United States National Bank of Denver, defendant.

*Daniel J. Mooney,* guardian ad litem for infants, defendants.

SCHREIBER, J. In this action for the judicial settlement of the accounts of the trustee and its predecessors of eight *inter vivos* trusts, the plaintiff trustee also seeks the determination of certain questions as to the validity and construction of certain of the provisions of the trust instrument.

By the indenture dated October 4, 1900, the grantor provided that the income be paid to his wife during her life or until she remarried. He directed that upon her death or remarriage, the corpus be divided into as many shares as there were children born of the marriage and that each such share be held in trust for the life benefit of each child. His children then were Margery Verner Reed (who subsequently predeceased her mother, the primary life tenant) and a son, Verner Z. Reed, Jr. Another son, Joseph V. Reed, was born thereafter, in 1902.

By a supplemental agreement made April 5, 1916, between the grantor, his wife and his daughter and the trustee under the indenture of 1900, that indenture was modified in certain respects, and certain substitutions of securities theretofore made thereunder, the prior conveyance of certain additional property to the trustee, to be added to the trust fund thereunder, were confirmed.

Upon the termination, on the death of the wife in 1945, of the trust in her favor, trusts were by the terms of the 1900 indenture required to be set up for each of the two surviving children, Verner Z. Reed, Jr., and Joseph V. Reed. The trustee seeks a determination that these trusts are valid. The sole doubt as to their validity arises from the fact that the indenture of 1900 attempted to suspend the power of alien-

ation for the life of the wife and of any after-born child living at the time of her death, Joseph V. Reed being such a child.

Whatever may be said as to the validity of the trust for the after-born child, Joseph V. Reed, the trust is valid as to the grantor's son Verner Z. Reed since the indenture directed a severance of the shares. The secondary trusts were thus not so extricably commingled as to render them all invalid (*Matter of Mount*, 185 N. Y. 162; *Matter of Horner*, 237 N. Y. 489, 503).

The trust for the benefit of the after-born child, Joseph V. Reed, as made originally on October 4, 1900, is invalid, for it contravenes the rule against perpetuities (Personal Property Law, § 11; Real Property Law, § 42; *Matter of Lyon*, 271 N. Y. 204; *Matter of Horner*, 237 N. Y. 489, supra). However, by article (E) of the original indenture the right was reserved to the grantor and the adult interested beneficiaries, or their survivors, to substitute for any securities composing the trust any other securities designated by them. Such unrestricted reserved power to substitute assets in the trust is equivalent to the reservation of a power to revoke, alter or modify the trust (*Bankers Trust Co.* v. *Topping*, 180 Misc. 596; *Commonwealth Trust Co. of Pittsburgh* v. *Driscoll*, 50 F. Supp. 949, affd. 137 F. 2d 653, certiorari denied 321 U. S. 764). Where a power to alter, amend, modify or revoke a trust has been reserved, the suspension period of the power of alienation runs from the expiration of the reserved power and not from the date of the creation of the trust (*City Bank Farmers Trust Co.* v. *Cannon*, 291 N. Y. 125; *Schenectady Trust Co.* v. *Emmons*, 261 App. Div. 154, affd. 286 N. Y. 626). The agreement of April 5, 1916, modified, confirmed and ratified the original trust indenture. Although Joseph V. Reed was not in being at the time of the creation of the trust, in 1900, he was born prior to the execution of the amended instrument. Thereafter no other children were born. It is manifest that the plan of the grantor was to benefit the children of his marriage equally. Trust instruments should be so construed as to render their provisions valid rather than invalid, where the intent of the grantor will be carried out rather than defeated (*Matter of Hoyt*, 116 App. Div. 217, affd. 189 N. Y. 511; *Morris* v. *Morris*, 272 N. Y. 110). Thus, tested by the date of the amendatory agreement, and in the light of the accepted rules of construction and the authorities, the trust for the benefit of Joseph V. Reed is valid.

The indenture of 1900 (article [A]) authorizes the trustee to substitute, in place of the securities composing the trust at the time of its creation, " other securities ", and to keep the fund invested. These provisions clearly empower the trustee to invest and reinvest in legal investments. They do not, however, permit it to invest in nonlegals. Such a power can be sustained only if the instrument specifically so declares (*Matter of Doelger*, 254 App. Div. 178, affd. 279 N. Y. 646).

The indenture of 1900 (article [E]) further requires the trustee to substitute for any specified securities composing any of the trust funds created by it " any other designated securities ", whenever the donor and the adult beneficiaries of such trust or the survivors of them so request. The trustee seeks a determination that it is authorized upon such request to invest in any stocks, bonds or other securities " although the same may not be legal investments for a Trustee under the laws of the State of New York ".

The propriety of such a determination is challenged first on the ground that joint action by the donor and the adult beneficiaries is required and the grantor having died, such joint action is no longer possible. The agreement, however, provides that specified securities are to be substituted upon the written request of the donor and the adult beneficiaries " or the survivors of them." Thus, the right survives the donor's death and may be exercised by the surviving beneficiaries. To restrict the term " survivors " in this clause to the beneficiaries, so that the clause was to be operative only during the donor's life, is to impute to the donor an intent, which had it existed, would presumably have been clearly expressed.

But it is urged that, even conceding that in each of the two trusts now existing under the 1900 indenture, the adult beneficiary has the power to direct the substitution of designated securities, that power is, by reason of the interest of the infant remaindermen, a fiduciary one, and, therefore, to be exercised only under the same limitations as to legal investments as rest upon a trustee. The limitations in question are however purely statutory, and the governing statute (Decedent Estate Law, § 111, subd. 1) imposes them only upon " an executor, administrator, trustee or other person holding trust funds for investment * * *." (Cf. also Personal Property Law, § 21, subd. 1.) The beneficiary here exercising the power to require substitution corresponds to none of these statutory categories.

Moreover, did any doubt remain, the comprehensive language of the clause, which authorizes the substitution of "any" other designated securities, would dispose of it.

The provisions of the two trust agreements made on January 2, 1917, for the life benefit of Verner Z. Reed, Jr., and Joseph V. Reed, are identical except for the name of the life beneficiary. The primary life tenant is granted power to withdraw one third of the corpus on reaching the age of twenty-five years, another one third upon reaching the age of thirty years. Two thirds of the principal of each trust has been withdrawn, the life beneficiaries having reached the age of thirty years. As to the remaining third, the agreements provide that the primary life tenant may withdraw it also "if and when [he] shall become entitled to receive his share of the income of both of the two trust funds heretofore established by deeds of trust made by the donor and Mary Dean Reed * * * dated October 4, 1900 and August 23, 1902, in accordance with the provisions of said instruments * * * provided he shall then be of the age of thirty and upwards." Under the provisions of the trust deed of October 4, 1900, already reviewed, the two sons (the primary life tenants under the 1917 trusts), became entitled to receive the income upon the death of their mother. Under the provisions of the 1902 trust deed they became entitled to receive the income on the death of their father. Both mother and father, as already stated, are deceased.

Their right to withdraw the last third of the principal of the 1917 trusts is, nevertheless, challenged on the ground that the trust deed of 1902 having been revoked in 1920, with their consent, such revocation made impossible performance of one of the conditions upon which rested such right. It is in effect contended that the life tenants herein, by consenting to said revocation, created a situation making performance impossible. It is clear from the language employed by the grantor that he intended that each son should have the right to withdraw such remaining one-third share when he attained the age of thirty years and when he became entitled to receive the income of both the 1900 and 1902 trusts. Each became entitled to receive his share of income of the 1902 trust when his father died in 1919. The grantor did not require that the income be actually received by said beneficiary but that he merely be *entitled* to receive the same. In this view, the revocation of the 1902 trust is immaterial, for the beneficiary had become entitled

to receive the income under that trust prior to its revocation. The court should construe conditions liberally, whenever it may properly do so, in order to avoid a forfeiture which the law generally does not favor. The court holds, therefore, that Verner Z. Reed, Jr., and Joseph V. Reed have the right to withdraw the remaining one-third share of the trusts created in 1917.

The power of appointment as to the final one-third share may be released in such manner as to limit the person or objects in whose favor such power would be exercisable (Real Property Law, § 183; *Matter of Pope*, 184 Misc. 419).

If there be no objections to the accounts, decision in accordance herewith and final judgment may be settled on notice. Otherwise settle interlocutory judgment providing for objections, if any, to be served within twenty days after service of a copy of the interlocutory judgment with notice of entry.