STONE and others, Appellants, vs. DEPARTMENT OF TAXA-
TION, Respondent.*

*September 15—October 11, 1949.*

* Motion for rehearing denied, without costs, on January 10, 1950.

For the appellants there was a brief by *Frederic Sammond, Lynford Lardner, Jr.,* and *Joseph R. Barnett,* attorneys, and *Miller, Mack & Fairchild* of counsel, all of Milwaukee, and oral argument by *Mr. Sammond.*

For the respondent there was a brief by the *Attorney General, Harold H. Persons,* assistant attorney general, and *Neil Conway,* inheritance tax counsel, and oral argument by *Mr. Persons* and *Mr. Conway.*

HUGHES, J.  Sec. 72.75 (1), Stats., provides for taxes upon transfers of property, real, personal, or mixed, subsequent to July 1, 1933, and prior to July 1, 1947.  Sub. (2) (g) thereof provides a gift shall be complete for tax purposes when the donor has divested himself of all beneficial interest in the property transferred and has no power to revest any such interest in himself or his estate.

The issue in this case arises over the extent of the gift in 1945.  Should it be measured upon the value of the life income to the settlor and the beneficial interest of Marie Stone, as contended by the taxpayers, or upon the entire corpus of the trust, as contended by the Department of Taxation?

The taxpayers contend that settlor could not give more in 1945 than he owned.  There is no dispute over this basic statement.  There is, however, a real controversy between the

parties upon the question of what interest in the trust the settlor owned in 1945. In order to determine what the settlor owned in 1945 we must examine the effect of the trust indenture of 1931.

The law pertaining to gifts is well established, as stated in 38 C. J. S., Gifts, p. 799, sec. 20:

"In order to constitute an effectual delivery the donor must not only have parted with the possession of the property, but he must also have relinquished to the donee all present and future dominion and control over it, beyond any power on his part to recall. The surrender must be so full and complete that, if the donor should resume control over the property ·without the consent of the donee, he would be answerable in damages as a trespasser. The retention of control in the hands of the donor over the subject of the gift, or the reservation by the donor of any right to retake the property or appropriate it to other purposes, avoids the gift."

The taxpayers seem to concede that in the event the settlor had reserved the right to revoke by his own act alone, there would be no possible contention that the gift was complete in · 1931. They contend, however, that since Marie Stone had a substantial adverse interest to that of the settlor and because her act was necessary to make revocation possible, the gift was complete in all respects except as to the interests reserved to the settlor and to her.

It would appear obvious that the reason for reserving the right to revoke the trust would be for possible need of the settlor of the property conveyed to the trustees to meet his own requirements at some time in the future. It must be that he had confidence in Marie Stone and was satisfied that if a need arose which would impel him to revoke the trust, she would join in such revocation. Under the circumstances which existed in 1945 at the time of the waiver of the revocation it is apparent that if the needs of the settlor had required use of the corpus for his own benefit, the needs of Marie might

likewise have been dependent upon the same fund, and their interests in revocation would very likely have been identical.

At all events the gift to the boys did not vest by reason of the 1931 agreement since it was subject to revocation by the joint act of the settlor and Marie Stone.

Counsel for appellants argue that because of Marie's own beneficial interest in the trust and because of her natural interest in the welfare of the sons who were conditional beneficiaries, she would not likely revoke. It is true that the revocation was perhaps made less likely by the necessity that she join, but the power to revoke remained in the settlor and, if required by conditions, he had the right to exercise it with Marie's consent.

In *Burnet v. Guggenheim* (1933), 288 U. S. 280, 284, 53 Sup. Ct. 369, 77 L. Ed. 748, in considering a trust where the donor had reserved to himself the right to revoke, the supreme court said:

"By the execution of deeds and the creation of trusts, the settlor did indeed succeed in divesting himself of title and transferring it to others (*Stone v. Hackett,* 12 Gray [Mass.] 227; *Van Cott v. Prentice,* 104 N. Y. 45, 10 N. E. 257; *National Newark & Essex Banking Co. v. Rosahl,* 97 N. J. Eq. 74, 128 Atl. 586; *Jones v. Clifton,* 101 U. S. 225), but the substance of his dominion was the same as if these forms had been omitted. *Corliss v. Bowers, supra.* [281 U. S. 376.] He was free at any moment, with reason or without, to revest title in himself, except as to any income then collected or accrued. As to the principal of the trusts and as to income to accrue thereafter, the gifts were formal and unreal. They acquired substance and reality for the first time in July, 1925, when the deeds became absolute through the cancellation of the power."

The only difference between the absolute power of revocation and the necessity that the settlor's former wife and mother of the beneficiaries join in the revocation is that the two were required to agree that cause for revocation existed. This does

not make the gift in 1931 complete. We are of the opinion the trial court correctly held that the gift tax must be levied upon the entire corpus of the trust.

Because we determine that the gift of 1931 was incomplete, it is unnecessary to consider other issues raised upon this appeal.

*By the Court.*—Judgment affirmed.

BROADFOOT, J. (*dissenting*). It is conceded by the majority of the court that if the trust instrument was irrevocable so far as the settlor is concerned, the result in this case would be different. The settlor could revoke or amend the trust only with the consent of Marie Stone, who had no power of appointment. It is my opinion that she had a substantial adverse interest. Her interest determined by actuarial methods amounted to $9,479.25. She was divorced from the settlor. I can come to no other conclusion than that the instrument was irrevocable so far as the settlor was concerned, and that the judgment of the trial court should have been reversed.

I am authorized to state that Mr. Chief Justice ROSENBERRY and Mr. Justice FAIRCHILD concur in this dissent.