JOHN J. McEVOY, trustee, *vs.* BOSTON FIVE CENTS SAVINGS BANK, ANDREAS BLUME, administrator, claimant.

Suffolk.    November 17, 1908. — February 23, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Trust. Assignment. Will.*

A woman, having saving bank deposits amounting to about $2,000, executed and delivered an instrument in writing under seal transferring and conveying all her personal property, consisting of these deposits, to a trustee "in trust for the following uses: (1) Said trustee shall pay to me such moneys as I may demand of him at any time during my life until I have used the amount conveyed to him by me by this deed. (2) Upon my death said trustee shall pay my funeral expenses. And the sum of $50 to my nurse. . . . (3) After my death said trustee shall pay to my husband, J. L., if he survives me, the sum of $3 per week during his life or as long as said funds shall last. (4) If upon the death of my husband and myself there are any funds remaining in the hands of said trustee said trustee shall divide said balance of said trustee funds in equal parts and give said parts to [certain second cousins named.] I hereby reserve to myself the right to revoke this deed at any time during my life." On the delivery of this instrument the assignor told the trustee "that she intended by it to dispose of the property after she was dead as well as while she was living" and that "she intended this instrument in place of any will she might leave." *Held,* that by the instrument the assignor in no way limited her beneficial enjoyment of the property or her right to dispose of it during her lifetime, and that the portion of the instrument which related to the disposition of the property after her death was void as an attempt to make a testamentary disposition of property without executing a will in the manner required by the statutes of the Commonwealth; and that, even if such a testamentary intent did not appear sufficiently from the interpretation of the instrument itself, there was evidence of this fact in the declarations of the assignor.

CONTRACT, by a trustee under an instrument in writing executed by Jane Lever of Boston during her lifetime, against the Boston Five Cents Savings Bank, for $1,017.50, the amount of a deposit standing in the name of Jane Lever, who died in April, 1902. Writ in the Municipal Court of the City of Boston, dated November 22, 1902.

Andreas Blume was appointed administrator of the estate of Jane Lever, and thereafter was admitted as a claimant in the action.

On appeal to the Superior Court the case was tried before *Aiken,* C. J. The following facts appeared in evidence: On

April 9, 1902, Jane Lever executed and delivered to the plaintiff the following two instruments in writing:

"Commonwealth of Massachusetts.

"I, Jane Lever of Boston in the County of Suffolk and Commonwealth of Massachusetts in consideration of the love and affection that I have for my relatives herein named hereby give, transfer and convey to John J. McEvoy all my personal property consisting of six hundred and fifty one dollars and seventy cents in the Elliott Five Cent Savings Bank of Boston two hundred and sixty dollars in the Institution for Savings of Roxbury, Boston one thousand and fifty three dollars and forty one cents in the Boston Five Cent Savings Bank of Boston in trust for the following uses:

"(1) Said trustee shall pay to me such moneys as I may demand of him at any time during my life until I have used the amount conveyed to him by me by this deed.

"(2) Upon my death said trustee shall pay my funeral expenses.   And the sum of fifty dollars to my nurse Mary M. Wilson for services rendered as nurse.

"(3) After my death said trustee shall pay to my husband, Joseph Lever, if he survives me, the sum of three dollars per week during his life or as long as said trust funds shall last.

"(4) If upon the death of my husband and myself there are any funds remaining in the hands of said trustee said trustee shall divide said balance of said trustee funds in equal parts and give said parts to my second cousin, Jane Anne Harrison of Bolton, Lancastershire, England, to my second cousin Thomas Wilson, of Bolton, Lancastershire, England, to the two children of my second cousin, Edward Wilson late of Bolton, Lancastershire, England, to my second cousin Mary Wilson of Bolton, Lancastershire, England.   I hereby reserve to myself the right to revoke this deed at any time during my life.

"Witness my hand and seal at Boston this ninth day of April, 1902.

her<br>
Jane × Lever   (Seal)<br>
mark."

"Witnessed by
        "William W. Clarke.
         Mary A. McTighe.
         Mary M. Wilson."

"April 9, 1902.
"To the Treasurer of the Boston Five Cents Savings Bank.
Boston, Mass.

"Sir : — Please pay to John J. McEvoy all the moneys that
have been and may be deposited, together with the interest that
has and may become due on account of Book No. 17722.

her

"William Burns.                                   Jane × Lever

mark."

Under the second of the instruments printed above, the plain-
tiff drew interest on the deposit in the defendant bank during
the lifetime of Jane Lever.  Jane Lever died in the latter part
of April, 1902.  The plaintiff testified that the doctor who at-
tended Jane Lever in her last sickness had a bill for his services
and the nurse had a bill; that there were funeral and other
bills; that at the time of the execution of the trust deed and
until the time of her death Jane Lever was living with her hus-
band, Joseph Lever ; that the plaintiff knew of no property
which she possessed other than that which he had taken posses-
sion of under the instruments printed above; that he had one
bank book of a bank in Roxbury transferred to him ; that the
amount was about two hundred and thirty or two hundred and
forty dollars ; that he presented the assignment to the bank and
got the book and put the money right back in his name; that
there was also the bank account which is the subject of this ac-
tion and also an account in the Eliot Five Cents Savings Bank
that he had not transferred; that he was the executor of the
will of Joseph Lever, the husband of Jane ; that Joseph died
twelve weeks after his wife and left $530 that was deposited in
the defendant bank ; that the amount left by Jane Lever in the
Eliot Five Cents Savings Bank was about $600 and the amount
left by her in the defendant bank was about $1,000 ; that she
left a little less than $2,000 all told; that during her lifetime
the plaintiff drew $70 in interest on the account in the defend-
ant bank; that there were outstanding unpaid bills of the doctor
for $30 and one or two other small bills ; that she told him to
pay all legitimate bills; that there was an undertaker's bill; that
part of it had been paid ; that he also sent for a person in Eng-

land that Mrs. Lever wanted to come over here; that he sent her $30; that he paid the minister and bought Mr. Lever a suit of clothes; that he paid Mr. Lever $3 per week during his lifetime; that he did not know of any bills other than the undertaker's, the doctor's and the nurse's; that he paid out $125; that there were bills of $250 outstanding, the doctor's, nurse's and undertaker's bills and a milk bill; and that what he paid out included what he paid the undertaker. He further testified as follows: " Q. And you understood that she intended by this instrument to dispose of the property after she was dead as well as while she was living? That is what you understood, was it not? A. Yes, that is what she told me.—Q. You understood that was what she intended at the time? A. Yes. — Q. That she intended this instrument in place of any will she might leave? A. She did."

The above was all the material evidence in the case. The plaintiff asked the judge to rule that upon all the evidence the claimant was not entitled to recover. The judge refused to make this ruling, and found for the claimant in the sum of $1,017.50, that being the amount represented by the book in the defendant bank, standing in the name of Jane Lever at the time of the service of the plaintiff's writ, together with whatever interest might have accrued since on that account, less the costs of the defendant taxed at $34.55 and without costs to the claimant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*W. Burns*, for the plaintiff.

*A. P. Worthen*, for the claimant.

KNOWLTON, C. J. The question in this case is whether the assignment to a trustee, made by Jane Lever, was a transfer of her property which divested her of her ownership and control during her lifetime, or whether it was in intention and legal effect an attempted testamentary disposition of such of her money as should remain at her decease. The property included in the conveyance was merely the deposits in certain savings banks. The trustee testified that she told him she intended to dispose of the property after she was dead as well as while she was living, and that she intended the instrument in place of any will she might leave. There was in the deed an express reserva-

tion of a power of revocation.  This in itself would not render it invalid if the instrument otherwise seemed intended to divest her of her absolute control of the property, as owner or as *cestui que trust* during her life, and to deprive her of the rights of a beneficiary who has a perfect power of disposition under the trust.

The trust in this case may be considered first in reference to its effect on the property during her life, and then in reference to its effect upon what might remain after her death.  The first statement of the trust by the assignor in the assignment is in these words : " Said trustee shall pay to me such moneys as I may demand of him at any time during my life until I have used the amount conveyed to him by me by this deed."  This gave her the right to demand any part or the whole of the money at any time, for any use that she chose to make of it.  It left her the sole beneficial owner of it, with an absolute power of disposition as long as she lived.  As against her, therefore, the only practical effect of the instrument during her lifetime was to give the trustee a right to collect and hold the property until she should ask for it. Her rights as beneficial owner during her life were not limited in any material way.  She could revoke the trust at any time, or she could demand and receive from the trustee all the money, at any time, under the trust, and then do with it what she chose.

The assignment is very different from that in *Kelley* v. *Snow*, 185 Mass. 288, in which the only right in the property reserved to the assignor for herself during her life was a right to use the income.  While she had a power by the writing to change the disposition of what remained after her death, she could not diminish the property which necessarily would pass to others under the trust.

The other part of the trust created by, the instrument in the present case relates solely to the disposition of the property after the assignor's death.  It follows that the only material effect of the instrument was testamentary, and that it cannot be given effect under our statutes, which permit a testamentary disposition of property only by a duly executed will.  See *Nutt* v. *Morse*, 142 Mass. 1 ; *Sherman* v. *New Bedford Five Cents Savings Bank*, 138 Mass. 581; *Brownell* v. *Briggs*, 173 Mass. 529; *Welch* v. *Henshaw*, 170 Mass. 409; *Bailey* v. *New Bedford Institution for Savings*, 192 Mass. 564.

But, if it be thought that this view of the construction and necessary legal effect of the instrument is too favorable to the claimant, the exceptions must be overruled on the ground that the evidence justified a finding by the trial judge that the paper was intended as a mere testamentary disposition of property, and not as a creation of a trust for any other purpose, and that therefore there was no error of law in the finding.

No question has been raised by either party in regard to the finding and order as to costs, and we do not consider it.

*Exceptions overruled.*