BENJAMIN B. SIMS et al., Appellants, v. SAMUEL B. BROWN.

Division Two, June 28, 1913.

1. **CONSTRUCTION OF WRITTEN INSTRUMENTS: Intention: Gathered from Four Corners.** The modern rule regarding the construction of instruments is that the intention of the grantor shall govern. That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it, and the court will enforce it, no matter in what part of the instrument it is found.

Sims v. Brown.

2. ————: ————: ————: **Deed or Will.** In a deed a present estate or interest is passed, while in an instrument testamentary in character no part of the title treated is to pass until the death of the grantor. When the grantor's intention appears to be that no estate or interest is to pass until his death, then the instrument is testamentary, and if not executed in the form and manner required of a will it is of no force or effect for any purpose.

3. ————: ————: ————: **Deed of Express Trust: Revocation by Later Deed.** An instrument purporting to deal in some manner with the title to certain land, in which are found the words, "and I do hereby give, grant and relinquish," "the land hereby given and granted," "the land hereby given, granted and disposed of," and "herein disposed of," and wherein the grantor requests that the trustee named, "at any time after my decease," "shall select and sell eighty acres of the land," "and it is also understood in regard to the land hereby given, granted and disposed of, that I reserve the right . . . to sell or dispose of any or all of said land," is *held* to be a deed creating an express trust with power of revocation, and not a will. A later deed conveying a part of the same land acted as a revocation of the trust as to that particular tract, divesting whatever title or interest the trustee and the *cestuis* had, and passing the complete title to the grantee in the later deed.

4. **EVIDENCE: Deed: Description of Land: Reference.** Evidence *held* insufficient to describe land conveyed by reference in a trust deed.

Appeal from Chariton Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*B. R. Dysart* and *Ben Eli Guthrie* for appellants.

(1) By her deed of February 25, 1862, Catharine Weldon parted with her title to the real estate in controversy, and Catharine Brown took a life estate, and the plaintiffs took the remainder in fee, as the bodily heirs of Catharine Brown. Gray v. Ward, 234 Mo. 297; Huntor v. Patterson, 142 Mo. 310; Hall v. French, 165 Mo. 430; Clarkson v. Clarkson, 125 Mo. 381. (2) The attempted reservation is inconsistent with and repugnant to the granting clause in said

deed and is destructive of the grant, and must be re-
jected in the construction of the deed. Utler v. Sid-
man, 170 Mo. 285; Gannon v. Pank, 200 Mo. 75; Ress-
ner v. Philips, 189 Mo. 515; Cornet v. Cornet, 248 Mo.
184. (3) To give effect to the reservation would be
to nullify the deed. One cannot sell property and
keep it at the same time. In effect she says "al-
though I have sold the property to A, I reserve the
right to sell it to B, if I so desire." When she sold
the property by a subsequent deed to Benjamin
Brown, she had not regained the title theretofore
made to Catharine Brown and her bodily heirs, and
hence her subsequent deed to Benjamin Brown was
a nullity. Where a grant has been made in the body
of the deed vesting the title, any subsequent provi-
sion in the deed, inconsistent with and repugnant to
the granting clause, will be ignored, and especially
so if the reservation works a dstruction of the grant.
See cases under point 2; Gray v. Ward, 234 Mo. 291;
Haines v. Weirick, 155 Ind. 548; Wilkins v. Norman,
139 N. C. 40. "A grantor cannot destroy his own
grant." Maker v. Lazell, 83 Me. 562. (4) It is evi-
dent that this attempted reservation is neither a con-
dition precedent, nor a condition subsequent, nor is
it operative as a defeasance. There is no provision
in the deed for a revertor. Studdard v. Wells, 120
Mo. 25; McAnaw v. Tiffin, 143 Mo. 667; Miller v.
Quick, 158 Mo. 495.

*Hammett & Howard* for respondent.

(1) The language of the instrument in question
being set up by plaintiffs as the foundation of their
claim and title stamps it as testamentary in character
and an attempted disposition of certain property by
will on the part of Catharine Weldon. No particular
form is requisite to constitute a valid devise; an in-
strument may thus operate which is to take effect

after the death of the maker, although its general form is that of a deed. Miller v. Holt, 68 Mo. 587. The instrument in question was an attempted testamentary disposition of the property. It has none of the features of the deed except the terms grant and relinquish and scroll for a seal and the acknowledgment and filing for record while all its other features are clearly that of an attempted last will and testament. The mere fact that the instrument was acknowledged and recorded does not change its character. Murphy v. Gabbert, 166 Mo. 596. If the intent was clear upon the face of the instrument that the parties designed same to operate as a deed, notwithstanding its form, the courts regarding more the substance than the form, would give effect to the intent, but where such intent is not apparent and the form of the instrument is that of a will, it must be regarded as a will. Miller v. Holt, 68 Mo. 588. An instrument of writing to be good as a deed must pass a present interest in the property attempted to be conveyed, and where it takes effect and becomes operative alone upon the death of the grantor, it is testamentary in character and insufficient as a deed. The test to determine whether an instrument is a deed or will is whether it is to take effect *in praesenti* or after the death of the maker. Murphy v. Gabbert, 166 Mo. 596. The instrument in the Murphy case, was acknowledged. (2) It is essential to the validity of a deed conveying an estate of freehold of inheritance to commence in the future, that the right to the future estate conveyed vests in the grantee immediately, though possession be deferred. Aldridge v. Aldridge, 202 Mo. 572. (3) If the instrument, at the instant of its delivery, if delivered, did not carry to the grantee the estate described subject to be defeated on the happening of a contigency named, it was not a deed. If it was a mere gift to take effect only on the death of the maker, then it was ineffectual for that purpose if not execut-

ed in the manner prescribed by law for the execution of a will and the instrument is invalid and there is no foundation for plaintiff's claim of title. Aldridge v. Aldridge, 202 Mo. 565. (4) There is no proof in this case on the part of plaintiffs that the instrument of writing was ever delivered to the grantee whoever it was, Rachel Catharine Brown or Drucilla Mitchell. Deeds to pass title must be delivered. Miller v. Holt, 68 Mo. 586.

WILLIAMS, C.—This is an action under section 2535, Revised Statutes 1909, to quiet title to an undivided one-sixth interest in the southwest quarter of section 2, township 55, range 14, containing 160 acres more or less, in Randolph county, Missouri. The suit was originally begun in the circuit court of Randolph county, and was afterwards by agreement of the parties transferred to the circuit court of Chariton county, where trial was held, resulting in a judgment finding that defendant is owner of said land and that plaintiffs have no title or interest therein. Plaintiffs thereupon appealed to this court.

Quieting Title.

There is little dispute over the facts. Most of the evidence adduced was documentary in form. One Catharine Weldon was the common source of title. Plaintiffs (representing one-sixth of the bodily heirs of Catharine Brown) claim to have acquired their title through an instrument, which they claim is a deed, executed February 25, 1862, by said Catharine Weldon to said Catharine Brown and another. Defendant claims title through a deed dated May 4, 1868, executed by said Catharine Weldon to one Ben C. Brown, and by mesne conveyances from said Brown to the defendant, conveying the land in controversy.

The determination of the matters involved in this suit depends upon the construction given to the above-mentioned instrument, dated February 25, 1862, from

Catharine Weldon to Catharine Brown and another. It is therefore necessary that said instrument be copied in full. It is as follows:

"Know all men by these presents, that I, Catharine Weldon, of the county of Randolph and State of Missouri, knowing the uncertainty of life and the certainty of death, and being desirous of making such disposition of my earthly effects as I think right and proper, do hereby make the following disposition of the same (to-wit) for and in consideration of the love and affection I have for my daughter Catharine Brown, wife of Ben Brown, and for the further consideration of the fact of the said Catharine Brown and Ben Brown, her husband, having taken care of me in my old age, I do hereby give, grant and relinquish to my said daughter Catharine Brown and the heirs of her body at my death, the following described slaves, and all their increase, or as many of them as may then be living and belonging to me, to-wit: Mary Catherine, aged twenty-eight years, Martha Ione, aged thirteen, Mary Susan, aged six, Hager, aged three, Mary, aged fourteen, and Betty, aged twelve. And also all the household and kitchen furniture, and stock of every kind and description of which I may die possessed. And also all the money, cash, notes or other evidences of debt of every kind. All for the benefit of my said daughter, Catharine Brown, and the heirs of her body, with only this reservation (to-wit): The said Catharine Brown is to take care and well provide for my servant Hannah during her lifetime. And if it should become necessary, from any cause, for me to sell or otherwise dispose of any of the slaves above enumerated, during my lifetime, I reserve the right to do so. And I do also hereby give, grant and relinquish to my other daughter, Drucilla Mitchell, for the love and affection I have for her the following described lands in Randolph county, Missouri, under however, the following restrictions (to

wit): I do hereby appoint and request my son-in-law Ben Brown to act as trustee for my said daughter Drucilla Mitchell. And he is requested that at any time after my decease, he is to select any part of said land, not over eighty acres, and sell the same either publicly or privately, and pay over at once the proceeds thereof to my said daughter absolutely, for the use and benefit of her and her bodily heirs, and the remainder of said land he is to sell at such time and place as he may think proper, and on such terms as he may think most advantageous. And he is to pay semi-annually the interest arising from said sale of the land to my said daughter Drucilla Mitchell for the benefit of her and her bodily heirs, but if the said Drucilla Mitchell should die before I do, then only the proceeds of the eighty acres above spoken of is to go to the heirs of her body, and the proceeds of the balance of said land is to be paid to my daughter Catharine Brown for the sole use of herself and her bodily heirs. And it is also my wish that the death of my said daughter Drucilla Mitchell, the principal for which said except the eighty acres aforesaid, shall be paid to my said daughter Catharine Brown for the use and benefit of herself and bodily heirs. The land hereby given and granted to my said daughter for the benefit of herself and bodily heirs, upon the terms and conditions as therein set forth, include all the land purchased by me from William King and wife, except the portion of said land I have heretofore sold and conveyed to Ben Brown and wife by deed which is of record in the office of the clerk of the circuit court of Randolph county, in Book M, pages 433 and 434, being all except 320 acres. And it is also understood in regard to the land hereby given, granted and disposed of, that I reserve the right, if I should so desire or necessity might require, I can and reserve the right to sell or dispose of any or all of said land, otherwise than herein disposed of. In testimony whereof

I have hereto set my hand and seal this the 25th day of February, A. D. 1862.

her<br>
CATHERINE x WELDON      (Seal),<br>
mark

"Witness—

"JOHN FINNIE

his

"SIMEON x HUNT."

mark

The above instrument was duly acknowledged and was recorded on the 26th day of February, 1862, in the recorder's office of Randolph county, Missouri. If said Catharine Brown, by virtue of said instrument, acquired unconditionally a life estate in the land in suit, with remainder over to her bodily heirs, then plaintiffs are entitled to an undivided one-sixth interest in the land. If title did not so pass, then the title to the entire 160 acres in suit is in defendant by virtue of the other conveyances above mentioned. After introducing in evidence the above copied instrument, plaintiffs introduced in evidence a deed dated February 21, 1848, from William King and wife to said Catharine Weldon, conveying to her the land in controversy and other lands.

Witness John W. Brown testified for plaintiffs that the land involved in this suit was a part of 640 acres which said Catharine Weldon purchased from William King. It was admitted by the parties that "there never was any exercise of the powers or duties attempted to be imposed by the terms of the instrument executed by Catharine Weldon, dated February 25, 1862, by the trustee therein named, or by any other person."

I. Appellants contend that the above copied instrument vested in Catharine Brown a life estate,

252 Mo.—5

with remainder over to her bodily heirs, **Written Instruments: Construction.** and that the last clause thereof, reserving to the grantor the right to sell said land, is repugnant to the grant, and therefore void. Respondent's position is that the instrument is testamentary in character, and that therefore no title passed.

For the present, we will assume that the instrument in question undertook to deal with the land now in controversy, reserving that question, however, for discussion later in this opinion.

The early rule of construction of instruments was that the first words in a deed, and the last words in a will, would control. But that rule has been discarded as not being the safest route by which to arrive at the grantor's intention, and the modern rule in that regard is as stated by Judge Marshall in Utter v. Sidman, 170 Mo. 284, l. c. 294:

"The intention of the grantor as gathered from the four corners of the instrument is now the pole star of construction. That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it, and the court will enforce it, no matter in what part of the instrument it is found."

And if possible without violating any of the legal proprieties, that construction should be given the instrument which will give life to the whole and develop consistency rather than inconsistency between its parts. One of the important distinctions between a deed and an instrument testamentary in character is that in a deed a present estate or interest is passed, while in an instrument testamentary in character no part of the title treated is to pass until the death of the grantor. Whenever the instrument discloses the grantor's intention to be that no estate or interest is to pass until the death of the grantor, then it is considered to be testamentary in character, and comes within

the rule governing the passing of title by will; and if not executed in form and manner required of a will it is of no force or effect for any purpose. [Murphy v. Gabbert, 166 Mo. 596; Aldridge v. Aldridge, 202 Mo. 565; Givens v. Ott, 222 Mo. 395, l. c. 411; Terry v. Glover, 235 Mo. 544, l. c. 551-2.] Examining the present instrument, we notice that the grantor uses the following expressions: "And I do hereby give, grant and relinquish," "the land hereby given and granted," and in the last sentence thereof, "the land hereby given, granted and disposed of," and "herein disposed of." It will be conceded that the above expressions, if not overcome by other languge in the instrument, are sufficient to show an intention to pass a present estate or interest. The only other expressions in the instrument which would have any tendency to overcome the meaning and intent of the above words are the following: The grantor requests that the trustee, "at any time after my decease," "shall select and sell eighty acres of the land," and lastly states, "and it is also understood in regard to the land *hereby given, granted and disposed of,* that I reserve the right, if I should so desire or necessity might require, I can and reserve the right to sell or dispose of any or all of said land otherwise than herein disposed of." The phrase, "at any time after my decease," when fairly construed, means nothing more than a postponement of the time when the trustee is to take possession of the land for the purposes of the trust. The fact that the enjoyment of the estate is postponed to a future date does not change the instrument, otherwise a deed, to an instrument testamentary in its nature. Such a provision is authorized by the statute first enacted in 1845 (section 9, p. 220, Revised Statutes 1845), and brought forward in each subsequent revision, being now section 2876, Revised Statutes 1909. [O'Day v. Meadows, 194 Mo.

Express Trust: Revocation.

588; Aldridge v. Aldridge, 202 Mo. 565, l. c. 751-572.]
If, then, the intention to convey or pass a present
estate to the trustee is to be overcome, it must be by
the words which reserve to the grantor the right to
dispose of the land by sale. But this provision, when
properly construed, is but a reservation to the grantor
of the power to revoke the trust which she undertook
by the instrument to create. The instrument when
considered from its four corners shows a clear intent
to create a voluntary express trust or settlement in
favor of said Catharine Brown and her bodily heirs
with reference to all of said land, except the eighty
acres conveyed in trust to the other daughter, with a
power of revocation reserved to the settler. Such
reservation of power is not inconsistent with the cre-
ation of a voluntary trust. "The power of revoca-
tion may, however, be reserved, and is perfectly con-
sistent with the creation of a valid trust." [28 Am.
and Eng. Ency. Law (2 Ed.), p. 900; 39 Cyc. 92 (c).]
In fact, courts of equity have always looked with sus-
picion upon voluntary trusts or settlements which do
not reserve a power of revocation.[Garnsey v. Mundy,
24 N. J. Eq. 243; 1 Perry on Trusts and Trustees (6
Ed.), sec. 104, footnote 3, p. 130.]

The case of Nichols v. Emery, 109 Cal. 323, is a
well considered case on the general matters involved
here. In that case the owner of real estate conveyed
the same to a trustee to make sale of the land within
ten months after the grantor's death, and to dis-
tribute the proceeds as in the deed directed. The
deed also reserved to the grantor the power to sell
the property. The grantor died without making sale
of the property, and a contest arose as to whether the
instrument was a deed or an instrument testamentary
in character. It was held that the instrument con-
veyed *in praesenti* an estate to the trustee, and that
the power of revocation contained therein did not de-
stroy its character as a deed creating a voluntary

express trust, nor make the instrument a will or an instrument testamentary in character. The court said:

"Indeed, this power of revocation was strongly favored in the case of voluntary settlements at common law, and such a trust without such a reservation was open to suspicion of undue advantage taken of the settler. [Lewin on Trusts, *75, 76; Perry on Trusts, sec. 104.]

"We think, however, that the circumstances of the reservation of power to revoke, and the limitation of the trust upon the life of the settler, have operated to mislead the learned judge of the trial court. If the life selected had been that of a third person, and if no revocatory power had been reserved, no one would question but that a valid express trust had been created. But the fact that the designated life in being was the settler's could not operate to destroy its validity, for he had the right to select the life of any person as the measure of duration. And the fact that he reserved the right to revoke did not impair the trust, nor affect its character, since title and interest vested subject to divestiture only by revocation, and if no revocation was made, they became absolute.

"A man may desire to make disposition of his property in his lifetime to avoid administration of his estate after death. Indeed, in view of the fact, both patent and painful, that the fiercest and most expensive litigation, engendering the bitterest feelings, springs up over wills, such a desire is not unnatural. And when it is given legal expression, as by gifts absolute during life, or by gifts in trust during life, or voluntary settlement, there is manifest, not only an absence of testamentary intent, but an absolute hostility to such intent."

In the case of Markwell v. Markwell, 34 Beav. 12, it was held, where the settler provided in the volun-

tary trust document or deed that the trust estate was to be subject to such debts as he contracted during life, that the trust was defeated by debts made by the settler, even though the debts were in the form of voluntary bonds given for the purpose of defeating the settlement.

In Gaither v. Williams, 57 Md. 625, where the grantors of settlers, in creating a voluntary trust, re-served the power to revoke the same, it was held that the sale under a subsequent mortgage executed by the settlers on the trust property worked a revocation of the trust on the land and passed the title thereto, and that it was not necessary that the mortgage should have referred to the power of revocation reserved in the trust deed.

In Ewing v. Shannahan, 113 Mo. 188, the doctrine hereinabove discussed was recognized. In that case the grantor, by deed dated December 31, 1863, created an express trust, but reserved no power of revocation. In 1866, the grantor undertook to revoke the trust by having the trustee execute a quit-claim deed back to the grantor. The court, applying the rule announced by Perry on Trusts and Trustees, supra, held that "a completed trust, *without reservation of power of revocation,* can only be revoked by the consent of all the beneficiaries." (L. c. 196.)

In the present case the settler, by reserving to herself the power of sale of the land which is the subject of the trust, clearly intended thereby to reserve the power of revocation; and in the year 1868 she exercised that reserved power of revocation by executing and delivering a warranty deed conveying the land here in controversy, and that deed oper-

By later Deed. ated as a revocation of the trust as to that particular tract, divesting whatever title or interest the trustee and *cestuis* theretofore had in the same, and passing the complete title to the grantee in said warranty deed, which title, by mesne convey-

ances, later passed to the defendant, respondent here-in. The trial court, therefore, properly decreed the title to be in defendant.

II. We are unable to see from the evidence ad-duced how appellants could recover upon any theory. It will be noticed that the instrument of February 25, 1862, under which plaintiffs claim, does not expressly describe the land sought to be affected by the trust. The only de-scription is by reference. The instrument says that it shall include all the land which the grantor purchased from William King and wife, "*except* the portion of said land I have *heretofore* sold and conveyed to Ben Brown and wife by deed," recorded "in Book M, pages 433 and 434." Appel-lants introduced the deed from King and wife, show-ing that the land in controversy was conveyed there-by, but no offer of proof is made as to what part of said King land had theretofore been conveyed by said Catharine Weldon to Brown by the deed referred to. It is therefore impossible to ascertain whether the land in suit was a part of the King land remaining after the prior sale to Brown, and therefore a part of the land sought to be identified and described by ref-erence.

*Evidence: Describing Land Granted.*

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WIL-LIAMS, C., is adopted as the opinion of the court. All of the judges concur.