ROSE v. UNION GUARDIAN TRUST CO.

1. Husband and Wife—Antenuptial Conveyances—Fraud.
    Conveyances of property immediately prior to marriage are not
    *per se* fraudulent in this State.

2. Same—Antenuptial Conveyances—Fraud.
    Fraud in conveyances of real estate to a trustee about a week
    before settlor married plaintiff and which deprived her of
    dower rights *held*, not to have been shown by plaintiff where
    record shows that settlor had provided for her liberally by
    transferring a large part of his property to her *inter vivos*
    by means of joint deeds and joint bank accounts.

3. Trusts—Settlor's Control.
    Provisions of trust instruments must be considered in review-
    ing trial court's holding that settlor, who had conveyed eight
    parcels of real estate to trustee about a week before marriage
    to plaintiff, had retained so large a measure of control over
    the trust *res* as to remain in legal effect the actual owner
    with the trustee as agent only.

4. Same—Statutes—Express Trusts—Validity—Settlor's Con-
    trol.
    A valid trust was created by trust instruments whereby full
    legal title was conveyed to the trustee by an instrument suf-
    ficient to create a valid trust under statute stating purposes
    for which an express trust might be created, notwithstanding
    that trustee was to hold the legal title in the property during
    settlor's life for his benefit and upon his request to convey
    all or any of the trust *res* to such parties as he might desig-
    nate; that settlor might elect to manage the property, as he
    did do; that the trustee need not pay the taxes; that the
    settlor might borrow money on the trust *res*; sell, invest and
    reinvest the trust property; use and enjoy all the trust prop-
    erty; revoke the trust and change the beneficiaries as was
    done (3 Comp. Laws 1929, § 12977).

5. Same—Control by Settlor—Reservations.
    The fact that the settlor, rather than the trustee, has control
    of the trust *res* does not necessarily defeat the purpose of the

Distinction between an agency and a trust, see 1 Restatement,
Trusts, § 8.
    Testamentary character of disposition where settlor reserves power
to revoke, modify or control, see 1 Restatement, Trusts, § 57.

trust since by the trust instrument title to the property passes to the trustee and the beneficiaries take vested interests in the property, the powers reserved to the settlor amounting to conditions subsequent upon the happening of which the vested interest would become divested.

6. SAME—PRIVATE AND PUBLIC EFFECT—EVASION OF TAXES.
Trusts may have different private and public effect, hence, fact that trust might allow evasion of taxes does not afford a basis for holding trust invalid, as the government has ample power to conserve its taxing authority.

7. SAME—FRAUD OF CREDITORS.
A trust resorted to for the purpose of defrauding creditors may be held void under the fraudulent conveyance act but in such an instance fraud must be shown (3 Comp. Laws 1929, § 13392 *et seq.*).

8. SAME—ANTENUPTIAL CONVEYANCE—HUSBAND AND WIFE—FRAUD.
Trust which, after settlor had greatly curtailed trustee's obligations under the trust agreement, still left trustee with legal title and with important duties during settlor's lifetime as well as after his death *held*, not invalid in suit by widow of settlor to set it aside as in fraud of her right of dower by virtue of marriage about a week after the trust was established in the absence of any fraud.

Appeal from Wayne; Ferguson (Homer), J. Submitted October 15, 1941. (Docket No. 53, Calendar No. 41,699.) Decided January 5, 1942.

Bill by Clara B. Rose against Union Guardian Trust Company, a Michigan corporation, and Ethel Alice Rose to set aside deeds and avoid a trust. Decree for plaintiff. Defendant Ethel Alice Rose appeals. Reversed and bill dismissed.

*Emil W. Columbo,* for appellant.

*Axford, Tarsney & Cashen,* for appellee.

NORTH, J. This appeal involves the validity of a trust instrument which Benjamin Rose executed

October 26, 1927, about a week prior to his marriage to plaintiff, Clara B. Rose. Benjamin Rose died testate September 16, 1933. Plaintiff renounced the provisions made for her in his will, and elected to take under the statute. Incident to creating this trust Mr. Rose conveyed eight parcels of land to the predecessor of the Union Guardian Trust Company. The deeds were recorded within two days. He changed the beneficiaries named in the trust instrument by means of a supplemental agreement on August 13, 1932, under which defendant Ethel Alice Rose, his daughter by a former marriage, was to receive the trust property outright as beneficiary at his death. By her bill of complaint plaintiff sought cancellation of the deeds through which Mr. Rose conveyed title in trust to the parcels of real estate to the defendant trust company, and also cancellation of the two deeds by which the trust company after the death of Mr. Rose sought to convey title to defendant Ethel Alice Rose. The circuit judge decreed to plaintiff the relief sought. Defendant Ethel Alice Rose has appealed.

There are two grounds on which it is claimed these trust instruments should be held invalid: (1) That the trust was set up by Benjamin Rose shortly before his marriage to plaintiff in an effort fraudulently to deprive her of her dower rights; (2) That Benjamin Rose retained so many rights and such complete control in the transferred property that in law he remained seized of the fee during coverture.

The trial court found as a matter of fact that Benjamin Rose did not transfer the property to the trustee so as fraudulently to deprive plaintiff of her dower rights. The record shows that he provided for her liberally, transferring a large part of his property to her *inter vivos* by means of joint

deeds and joint bank accounts. *Noah* v. *Noah,* 246 Mich. 324, 327, holds that conveyances of property immediately prior to marriage are not *per se* fraudulent in Michigan. We agree with the trial court that no fraud was shown by plaintiff in the instant case.

However, the trial court found as a matter of law that Benjamin Rose retained so large a measure of control over the trust *res* as to remain in legal effect the actual owner, with the trustee being his agent only. In reviewing this holding we must consider the provisions of the trust instruments.

The language of the trust instrument of October 26, 1927, is sufficient to create a valid trust under 3 Comp. Laws 1929, § 12977 (Stat. Ann. § 26.61). Full legal title was conveyed to the trustee. See *Goodrich* v. *City National Bank & Trust Co.,* 270 Mich. 222. But the trial judge found that the following provisions in the trust negative this language and make it only an agency agreement: (a) that the trustee was to hold legal title in the property during settlor's life for his benefit, and upon his request to convey all or any of the trust *res* to such parties as he might designate; (b) that he might elect to manage the property, as he did do; (c) that the trustee need not pay the taxes; (d) that the settlor might borrow money on the trust *res*. He also had power to direct the sale, investment and reinvestment of the trust property; to use and enjoy all trust property; to revoke the trust; and to change the beneficiaries, as he did by the supplemental trust agreement of August 13, 1932.

There is no Michigan case which is fully in point. Each trust instrument usually is different from all others. However, the question of how far a settlor may go in retaining rights to the trust property and

still set up an effective trust has been considered by this Court heretofore. *Goodrich* v. *City National Bank & Trust Co., supra,* held a trust good where a settlor reserved power to change beneficiaries, to amend the trust instrument, to revoke the trust in whole or in part, to withdraw all or part of the estate and to control investments. This case cites 73 A. L. R. 209, note, which is much in point, and 65 C. J. pp. 274, 275:

"The fact that the settlor, in creating the trust, makes certain reservations, does not in itself affect the validity of the declaration. Thus he may, in a proper case, reserve to himself a life income from the subject matter of the trust, or he may reserve the right to use or dispose of the corpus, or to supervise the trust property in the hands of the trustee, or to substitute a new trustee. The fact that there may be no portion of the trust property left for the beneficiaries to receive, by reason of the settlor's exercise of his reserved right to use or dispose of it, does not render the declaration invalid."

Trust instruments similar to the one in question have come up in other jurisdictions. See 1 Scott on Trusts, § 57.2, pp. 339–344, for a complete discussion. In *Kelly* v. *Parker,* 181 Ill. 49 (54 N. E. 615), a similar trust was upheld. 1 Scott, pp. 342, 343, discusses it:

"The owner of land executed a deed conveying the land to trustees upon trust to allow him to use, occupy, manage, control, improve, and lease the land in any manner and for any purposes he might desire, and to allow him to enjoy the rents and profits as if he were owner, with the further provision that he should have power during his life to mortgage, sell, and convey the land or any part of it and to dispose of the proceeds as he might dispose of the

rents and profits. It was provided that upon his death the land was to be sold and the proceeds paid to specified beneficiaries. The settlor reserved power to revoke the trust by an instrument in writing. It was held that the trust was not testamentary and was valid although not executed as a will. The fact that the subject matter of the trust was land and that it was conveyed by a formal instrument in which the purposes of the trust were fully stated doubtless influenced the court in upholding the trust in spite of the extensive powers of control reserved by the settlor.''

This broad construction has been followed in *Keck* v. *McKinstry*, 206 Iowa, 1121 (221 N. W. 851); *Talbot* v. *Talbot*, 32 R. I. 72 (78 Atl. 535, Ann. Cas. 1912 C, 1221); *Van Cott* v. *Prentice*, 104 N. Y. 45 (10 N. E. 257). Other states are more strict: *Union Trust Co.* v. *Hawkins*, 121 Ohio St. 159 (167 N. E. 389, 73 A. L. R. 190); *McEvoy* v. *Boston Five Cents Savings Bank*, 201 Mass. 50 (87 N. E. 465); and *Warsco* v. *Oshkosh Savings & Trust Co.*, 183 Wis. 156 (196 N. W. 829).

The argument against upholding the present trust, based on policy, is that the trustee is supposed to control the trust *res,* and if the settlor retains control, the purpose of the trust is defeated. On the other hand, as pointed out in the *Goodrich Case, supra,* it is argued title to the trust property passes to the trustee by virtue of the trust instrument, the beneficiaries take vested interests in the property, and the powers reserved to the trustor amount to conditions subsequent, upon the happening of which the vested interest would become divested. We adhere to our holding in the *Goodrich Case.*

There are two other arguments against upholding the present trust instrument; neither of which

is persuasive. One is that it might allow evasion of taxes; however, the *Goodrich Case, supra,* points out that the government has ample power to conserve its taxing authority; trusts may have different private and public effect. The second objection is that such a trust may result in defrauding of creditors. But this type of property disposal, if resorted to for fraudulent purposes, may be held void under fraudulent conveyance acts, 3 Comp. Laws 1929, § 13392 *et seq.* (Stat. Ann. § 26.881 *et seq.*). As above noted, there was no fraud disclosed in the instant case. All creditors will be paid and the wife was provided for liberally—in such a measure as negatives fraudulent intent. It was the settlor's intent to set up a valid trust. He used sufficient language to do so. The fact that he reserved sundry rights under the instrument did not render it void. He conveyed full legal title to the trustee and charged the trustee with important duties. It was to administer the trust unless the settlor undertook control, or if the settlor was declared insane; it was to pay the inheritance taxes levied at settlor's death, and was to sell sufficient trust property to pay such taxes; it was to keep books of account; and it could employ counsel. The fact that the supplemental agreement of August 13, 1932, cut down nearly all of the trustee's duties after settlor's death does not wipe out the trust, for the trustee still had duties while settlor lived, and was to see that inheritance taxes were paid and funds were available for same after settlor's death. In so holding we conform to our decision in *Goodrich* v. *City National Bank & Trust Co., supra,* and with the Illinois court in *Kelly* v. *Parker, supra,* which decisions are in accord with the prevailing rule applicable to this type of case.

See 73 A. L. R. 209; 118 A. L. R. 481; 14 Michigan State Bar Journal, 427.

In view of our conclusion above noted, the decree entered in the circuit court granting plaintiff the relief sought, on the theory that the trust was invalid, must be vacated; and a decree will be entered in this Court dismissing plaintiff's bill of complaint. Appellant will have costs of both courts.

CHANDLER, C. J., and BOYLES, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.