287 P.2d 665

**Harry ALEXANDER, Ralph H. Alexander, Evelyn Alexander Howick, Plaintiffs and Respondents,**

v.

**ZION'S SAVINGS BANK & TRUST CO., Defendant,**

**Hannah Wilson Alexander, Defendant and Appellant.**

No. 8042.

Supreme Court of Utah.

Sept. 21, 1955.

David E. Salisbury, Grant H. Bagley, D. Eugene Livingston, Salt Lake City, for appellant.

John L. Black, Salt Lake City, for respondent.

Romney, Boyer & Ronnow, Walker Bank Bldg., Salt Lake City, amicus curiae.

HENRIOD, Justice.

We affirm our opinion in our former case, 2 Utah 2d 317, 273 P.2d 173, 174. In doing so we need not repeat what we said before but address ourselves only to matters contained in the dissenting opinion about which we are constrained to comment. The dissenting opinion concerns itself mostly with the conceded proposition that a power of

revocation or control will not invalidate a trust. Our former opinion had no quarrel with such basic principle, and neither does this. But *that is not the question in this case*. The question is whether or not the instrument provides for a *vesting* of the cestuis' interest only after the settlor's death, not whether the settlor could revoke the trust. How the dissenting opinion possibly can review the language of the paragraph quoted in our former opinion, around which this controversy revolves, to conclude that a *present vested interest in the beneficiaries* was created, is difficult to understand. The language is clear, unambiguous and unequivocal that " 'The * * * *interests* of beneficiaries * * * created hereby *shall in no case vest* * * * *until they* * * * *become entitled to receive and demand* * * * *the income or principal* of the said Trust Fund' ", (all of which, according to the other clear and unambiguous language of the agreement was to occur *after the settlors' deaths*). As if the parties may have anticipated that such a strained construction as the dissenting opinion has placed on the clear language of the instrument might be indulged, the settlors went ahead and dispelled any such doubts about the matter by adding that the "beneficiaries shall have no * * * interest in said Trust Fund except as herein provided" (after settlors' death). To say such language vests an interest in the cestuis in praesenti seems to ignore the language itself.

The dissent can find no solace in its statement that "Several times in this provision (Par. 5) it refers to the interests of the beneficiaries in the present tense." A cursory examination of the paragraph does not bear out this assertion, and furthermore there is no reference to any *present* interest in the beneficiaries.

CROCKETT and WORTHEN, JJ., concur.

WADE, Justice (dissenting).

I dissent. On January 10, 1930, Henry A. Alexander and his first wife, both now deceased, entered into a trust agreement with defendant Zion's Savings Bank & Trust Company. Under that agreement they conveyed and transferred certain real estate, a note secured by a mortgage and all cash on deposit in a savings account with the bank to the bank as a trust fund, which the trustee agreed to hold until the death of the survivor of the trustor settlors, unless the trust was sooner revoked, and thereafter pay or transfer such property to three beneficiaries. Henry A. Alexander survived his first wife and after her death on November 3, 1936, he married her sister, Hannah Wilson Alexander, one of the defendants and the appellant here. For a while after their marriage they lived in her home. Then on May 21, 1940, he, in accordance with the trust agreement, directed the trustee to convey the real estate which was a part of the trust fund to third persons and on that day and in con-

sideration of such conveyance by the trustee the third persons conveyed to the trustee the home involved in this action in exchange for the property which had previously belonged to such trust fund. Thereupon Henry A. Alexander and the second wife moved into and occupied that home until after his death in 1943, and she continued to live in that home until May of 1952, when on account of disability she moved into the home of her son. Prior to his death Henry A. Alexander amended the trust agreement by reciting the death of his first wife and his second marriage, and provided that if she survived him she should be entitled to use and occupy the home personally as long as she desires.

When the second wife moved out of the home the beneficiaries demanded that the trustee convey it to them and the second wife claimed a one-third statutory interest therein.[1] The beneficiaries brought this action when the bank refused their demand. The trial court awarded judgment for the plaintiffs, the beneficiaries, from which the second wife appeals. On the first hearing we reversed the trial court, holding that under the broad rights and powers reserved in the settlors and the provision that the interests of the beneficiaries shall not vest until they are forthwith and absolutely entitled to the income or principal, the purported trust was illusory and testamentary and the widow is entitled to her statutory interest.[2] To examine the correctness of this result we granted a re-hearing.

During the life of the surviving settlor, the settlors reserved the right and power, 1) to transfer additional property to the fund, 2) to receive all income therefrom, 3) to revoke or terminate the trust in whole or part, 4) to change the beneficiaries, 5) to change the nature, terms and conditions of the trust, and 6) to pay all taxes, assessments, insurance premiums, and other costs, expenses, debts and obligations in connection with such funds. It further provided that upon the death of such survivor, if the trust has not been previously revoked, the trustee shall pay the cost of the funeral and last sickness of the survivor and after deducting its compensation shall distribute one-half of the remainder of the trust fund to Harry Alexander, a son of the settlors, and the other half in equal shares to Ralph Henry Alexander and Evelyn June Alexander, grandchildren of the settlors, but if either of the last mentioned beneficiaries have not reached their majority to hold such share for such beneficiary until such time. Further, in order to consummate the agreement the trustee was authorized to

1. Section 74-4-3, U.C.A.1953 provides: "One-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, to which the wife has made no relinquishment of her rights, shall be set apart as her property in fee simple, if she survives him; * * *."

2. Alexander v. Zion's Savings Bank & Trust Co., 2 Utah 2d 317, 273 P.2d 173.

sell all or any part of the trust fund and to execute the necessary instruments and documents for that purpose and to pay from such funds all costs and expenses thereof and to prosecute and defend all actions involving such funds. Then follows the provision that the beneficiaries' interests in the fund shall not vest until they are entitled to receive the income or principal, that they shall have no right to assign or anticipate any income or share in the fund and that neither income nor principal shall be liable for the obligations of the beneficiaries.

According to the overwhelming weight of authority such reservations and provisions in a trust agreement do not invalidate or make illusory or testamentary a trust agreement.[3] The essential characteristic of a testamentary instrument is that it takes effect only upon the death of the maker, whereas an express trust to be valid must become effective during the life of the maker. Some present estate or interest in the trust property must be conveyed or transferred and pass to the trustee to be held for the beneficiaries before the death of the maker, but this does not mean that the right to use, occupy, possess, manage or enjoy the income therefrom must vest immediately in the beneficiaries, nor does it require that such interest be irrevocable, or be placed beyond the power or control of the maker, or that the rights of the beneficiaries may not be defeasible upon the happening of certain contingencies. For all of these rights may be deferred, defeasible and contingent during the life of the maker.[4] Such a conveyance or transfer must have an "immediate operative effect to pass a present or future interest in property, either vested absolutely, vested subject to being divested, or contingent."[5]

3. See notes on this question in 73 A.L.R. 209, 118 A.L.R. 481, 164 A.L.R. 881, Scott's Trusts and the Statute of Wills, 43 Harvard Law Review 521, 1 Scott on Trusts 335–344, 1 Bogert's Trusts and Trustees, 474–492, Restatement of the Law of Trusts, section 57(1).

4. See Nichols v. Emery, 1895, 109 Cal. 323, 41 P. 1089, 50 Am.St.Rep. 43; Stone v. Hackett, 1858, 12 Gray, Mass., 227; Jones v. Old Colony Trust Co., 1925, 251 Mass. 309, 146 N.E. 716; National Shawmut Bank of Boston v. Joy, 1944, 315 Mass. 457, 53 N.E.2d 113 (expressly overruling McEvoy v. Boston Five Cents Savings Bank, 1909, 201 Mass. 50, 87 N.E. 465); Windolph v. Girard Trust Co., 1914, 245 Pa. 349, 91 A. 634; Keck v. McKinstry, 1928, 206 Iowa 1121, 221 N.W. 851; National Newark & E. Bkg. Co., v. Rosahl, 1925, 97 N.J.Eq. 74, 128 A. 586; Sims v. Brown, 1913, 252 Mo. 58, 158 S.W. 624; Cramer v. Hartford Conn. Trust Co., 1919, 110 Conn. 22, 147 A. 139, 73 A.L.R. 201; Schreyer v. Schreyer, 1905, 101 App.Div. 456, 91 N.Y.S. 1065, affirmed in 1905, 182 N.Y. 555, 75 N.E. 1134; Van Cott v. Prentice, 1887, 104 N.Y. 45, 10 N.E. 257; Bear v. Millikin Trust Co., 336 Ill. 366, 168 N.E. 349, 73 A.L.R. 173; Cleveland Trust Co. v. White, 1938, 134 Ohio St. 1, 15 N.E. 2d 627, 118 A.L.R. 475; Goodrich v. City National Bank & Trust Co., 1935, 270 Mich. 222, 258 N.W. 253; Rose v. Rose, 1942, 300 Mich. 73, 1 N.W.2d 458. Also see authorities cited in note 3, supra.

5. 1 Bogert's Trusts and Trustees 474 section 103.

94

Such an instrument is said to be "testamentary in its nature only when from its terms it appears that the intention of the maker was that it should not be operative as a conveyance or disposition of property or an interest, present or future, until his death."[6] The reservation by the maker of the right or power to revoke the trust in whole or in part does not prevent the interest or estate in the property from passing immediately. The failure to exercise such an option to revoke is not a condition precedent to the passing of the ownership of the property. Such interest is defeasible and may be divested at the maker's option but until the maker exercises such option to revoke, the estate or interest conveyed passes to and remains vested in the trustee and beneficiaries.

Appellants concede that all courts recognize that a valid trust may be created although the maker expressly reserves the power to revoke it during his lifetime.[7] Such reservation is said to rebut rather than import that the instrument is testamentary for such reservation is superfluous and inconsistent with a will which the maker may always revoke during his lifetime without such reservation.[8] There is an Ohio case wherein the contention is made that a trust agreement which reserves in the maker during his life the control of the trust property with the right to revoke the agreement is just as invalid as a direct gift would be with similar provisions.[9] It claims that the contrary doctrine originated in Massachusetts [10] without citing a single authority to support it but there are no authorities which follow that contention, for even in that case the court followed the contrary doctrine on account of a statute. The claim that the doctrine is new is also erroneous for such trusts have long been common both here and in England.[11] The right to revoke the trust in whole or

6. Roberts v. Taylor, 9 Cir., 1924, 300 F. 257, 260, 261.

7. Cleveland Trust Co. v. White, 1938, 134 Ohio St. 1, 15 N.E.2d 627, 118 A.L.R. 475, also authorities cited in note 3 and Scott's Trusts and the Statute of Wills, 43 Harvard Law Review, 521, at pages 528–9 and 534, 1 Scott on Trusts 336, 343–4, sections 57, 1–2; 1 Bogert's Trusts and Trustees 482.

8. Nichols v. Emery, 1895, 109 Cal. 323, 41 P. 1089, 50 Am.St.Rep. 43; Hall v. Burkham, 1877, 59 Ala. 349; Cribbs v. Walker, 1905, 74 Ark. 104, 85 S.W. 244.

9. Union Trust Co. v. Hawkins, 1929, 121 Ohio St. 159, 167 N.E. 389, 73 A.L.R. 190. Cleveland Trust Co. v. White, 1938, 134 Ohio St. 1, 15 N.E.2d 627, 631, 118 A.L.R. 475, says that the dicta expressed in the Hawkins case "to the effect that in the absence of a statute permitting it, a valid trust cannot be recognized where the settlor reserves the right of revocation. Such expression is opposed to the rule announced by all the courts of last resort * * *."

10. Stone v. Hackett, 1858, 12 Gray, Mass., 227.

11. 1 Scott on Trusts 344, Scott's Trusts and the Statute of Wills 43 Harvard Law Review 521, 534.

in part is recognized as one of the inherent rights of the settlor and it does not invalidate the trust nor prevent a present estate or interest in the property from passing and becoming effective immediately although it is subject to being defeated by the maker exercising his option to revoke. A different public policy governs the making of a trust agreement and the making of a direct gift, for one of the common purposes and uses of the trust agreement is to allow the settlor, during his lifetime, to retain the right to use, occupy, control and enjoy the income from the trust property together with the right to revoke the trust while passing to the trustee and beneficiaries an immediate estate or interest in the property. The right of the settlor to revoke a trust is similar to the right of an insured person to change the beneficiary to his insurance which is also said to create a present interest.[12]

Although some courts have assumed that if the settlor intends to avoid the requirements of making a will by disposing of his property through a trust agreement the trust would be invalid, this doctrine is now everywhere recognized as unsound.[13] For a valid trust which accomplishes that purpose is just as lawful as a will and the maker may choose any lawful means he wishes to accomplish his purposes.[14] What the cases which have made that assumption really hold is that the trust agreement must be what it purports to be, a real and genuine conveyance or transfer of the legal title to the trustee in trust for the beneficiaries and not a mere pretense or subterfuge to enable him to retain ownership of the property during his life and have the transfer become effective only upon his death.[15]

It is generally recognized that if the settlor retains the exclusive power to control all of the details of the administration of the trust property, even though the title to the trust estate passes to the trustee, still he is only the agent of the settlor and the trust is illusory and testamentary and invalid.[16]

12. See Post-Mortem Distribution of Property by Fred G. Cunard, 4 Utah Law Review 269.

13. See 1 Scott on Trusts 338, section 57.1; same Scott's Trusts and the Statute of Wills, 43 Harvard Law Review, 521, 528; 1 Bogert's Trusts and Trustees 475; Nichols v. Emery, 1895, 109 Cal. 323, 41 P. 1089, 50 Am.St.Rep. 43; Roche v. Brickley, 254 Mass. 584, 150 N.E. 866; Windolph v. Girard Trust Co., 1914, 245 Pa. 349, 91 A. 634; Bullen v. Wisconsin, 1916, 240 U.S. 625, 631, 36 S.Ct. 473, 60 L.Ed. 830; Superior Oil Co. v. State of Mississippi, 280 U.S. 390, 395, 50 S.Ct. 169, 170 L.Ed. 504; Newman v. Dore, 1937, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643.

14. See note 13 supra.

15. See note 13 supra.

16. See Scott's Trusts and the Statute of Wills, 43 Harvard Law Review, 529–533; 1 Scott on Trusts, 339–344, Section 57.2; 1 Bogert's Trusts and Trustees, 484–491, Section 104, and cases therein cited. The overwhelming weight of authority is that under facts similar to these, a valid trust and not an agency is created.

The essential characteristic of an agency relationship is that the agent acts exclusively on behalf of his principal and is subject to his control whereas the detailed control of administrative acts in the trustee relationship is left up to the trustee. The boundary line between these two relationships is often hard to define exactly and the decisions are not entirely harmonious.[17] Different cases from the same jurisdiction are often hard to reconcile.[18]

Appellant relies on Newman v. Dore, 1937, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643, where the court held that the trust was illusory and testamentary under the circumstances of that case because the settlor intended only to circumvent the statute without parting with his property. This case, other than the circumstances which indicated bad faith, seems to be contrary to the case of Van Cott v. Prentice, 104 N.Y. 45, 10 N.E. 257, where the reservations reserved seem to allow greater control in the settlor than in the Newman case.

The form and wording of the agreement in the instant case and the surrounding circumstances all indicate a presently effective transfer of the legal title to all of the trust fund, with the usual power in the trustee to administer the fund in accordance with the provisions of the agreement. The settlors expressly reserved, during the life of the survivor, all of the income derived from the property. They probably retained the possession of the real property as their home all the time except for a short period after the second marriage when Henry A. Alexander lived in the home of his second wife. For all that appears the bank had full possession of all the other trust funds which it controlled and managed in accordance with the agreement. Except for the power to revoke the trust, the right to change or modify the terms and conditions thereof, the right to pay the taxes and other expenses of the property, there is no provision in the trust agreement which gives the settlors the right to control the trustee in the details of the administration of the estate or to use the principal thereof. There was nothing about this agreement which tends to indicate that it was not intended to be genuine, or to show an intention to make the trustee an agent of the settlors in the administration of the trust fund. Practically all the cases hold that a valid trust results under such circumstances.

Does paragraph five of the trust agreement, which we quoted and relied on in the former opinion, indicate that no present interest in the property passes prior to the death of the survivor settlor? This is the usual spendthrift clause of a trust agreement. It provides that the beneficiaries' interests in the trust fund shall not vest in them until they are entitled to receive the principal or interest and forbids them to control, assign, or anticipate any income

---

17. See note 16 and authorities therein cited.

18. See note 16 and authorities therein cited.

or share in the trust property and that neither the income nor principal shall be liable for their obligations. The word "vest" as used in that provision is somewhat ambiguous. If it means that the right to use, enjoy, control, occupy and possess such property and receive the income therefrom shall not vest in the beneficiaries until they are entitled to receive the income or principal it merely confirms what is expressed in other parts of the agreement, and it does not tend to indicate that a present interest or estate in the trust fund did not become effective immediately upon the making of the agreement. On the other hand if it means that no interest in the trust fund whatever shall vest in the beneficiaries until they become entitled to receive the income or principal then it shows that the instrument is illusory and testamentary and not genuine and therefore invalid. This paragraph was made to protect the beneficiaries' estate or interest in the trust fund and place it beyond their reach and the reach of their creditors, it certainly was not intended to say that they obtained no present interest or estate in the trust fund, for that would in no way tend to accomplish the obvious purpose of such a provision. Such a construction would indicate that the whole trust agreement was mere sham and pretense and not intended to be genuine. Several times in this provision it refers to the interests of the beneficiaries in the present tense and the whole trend of this transaction indicated a genuine intention to pass to the beneficiaries a present equitable estate in the trust fund, subject to the rights reserved in the settlors to revoke and change the provision of the trust agreement. We conclude that this provision does not indicate an intention on the part of the settlors that no equitable estate in the trust fund should pass to the beneficiaries until they became entitled to receive the principal or income thereof, and that a valid trust was thereby created.

Appellant contends that Henry A. Alexander was the owner of an equitable fee simple estate or interest in this home during the second marriage and that under section 74–4–3, U.C.A.1953, she as his surviving wife is entitled to one-third of his equitable as well as his legal estate in real property. This contention is incorrect because, as we have pointed out, under this trust agreement his equitable estate in this property terminated upon his death and her statutory interest attaches only to his estate in the property after his death. Since he had no such estate in this property during their marriage, either equitable or legal, she could not acquire any interest therein. Under this trust agreement the beneficiaries obtained during his lifetime an immediately effective estate in all of the trust fund with the right to use, occupy, and enjoy the income therefrom deferred until after his death, thus during all of the time of this marriage while this property was a part of the trust fund they held the complete equitable ownership of this home after his

death. It is true that he had the right to revoke the trust and thereby acquire the full fee simple title to this property but the fact that he had the right to acquire such title does not give it to him until he exercises such option to revoke. His wife could not exercise that option for him and until he did revoke the trust or take the property from under this trust agreement he did not have any equitable estate or interest therein after his death.

Appellant further contends that even though the husband had no estate or interest after his death in this home after it became a part of the trust fund, that after the trade had been agreed upon and before the exchange deeds went into effect he was the complete equitable owner of it and that she then acquired her statutory interest therein. This argument overlooks the fact that the exchange deeds were given for and in consideration of each other and became effective simultaneously and until they became effective no legal or equitable estate in the property passed to the husband. While he had the power to direct that the title be conveyed to him instead of to the trust fund this power which he did not exercise does not make him the equitable owner of the property any more than his power to revoke the trust has that effect.

I am of the opinion the judgment should be affirmed.

McDONOUGH, C. J., concurs in the dissenting opinion of Mr. Justice WADE.