389 P.2d 63

**FIRST SECURITY BANK OF UTAH, N. A., a corporation, Plaintiff and Respondent,**

v.

**Edward H. BATES, Defendant and Appellant.**

**No. 9926.**

Supreme Court of Utah.

Feb. 4, 1964.

Howard & Lewis, Jackson B. Howard, Provo, for appellant.

Young, Young & Sorensen, Provo, Dave McMullin, Payson, for respondent.

HENRIOD, Chief Justice:

Appeal from a judgment cancelling a deed, quieting title to the property therein described and requiring defendant to con-

vey the same to plaintiff. Affirmed. Costs to plaintiff.

The following is a fair abstract of the evidence in a trial to the court, canvassed more favorably to plaintiff in accordance with customary appellate review.

Willis Bates, for whose estate plaintiff was appointed representative, after having known one Miss Vest, a notary public, for a decade or more, in 1949 had her prepare a deed to the subject property and assignment of an Oldsmobile and a Chevrolet, both in favor of his brother, Ted, who was married and had two children. He left the two documents with Miss Vest with instructions to deliver them to Ted after Willis' death. Willis did this just prior to his departure for California to work. He cautioned her not to apprise his brother of the documents, and she didn't. Significantly, sometime after the assignment, he sold the Oldsmobile. He returned to Utah and while here, on two different occasions Miss Vest returned the documents to Willis on the occasion of her going to California, but on each occasion the instruments were returned to her possession. Ted's wife died in 1956, but he remarried in 1960 to a woman, which the evidence shows, Willis was determined should not share in the property if and when the deed was delivered to Ted under Willis' previous instructions. Learning of this marriage, Willis sought out Miss Vest and emphatically told her of his disposition in the matter, telling her that if Ted were married to her at the time of delivery of the deed, Miss Vest was to see to it that Ted deed the property to the latter's two children. Ted later divorced his second wife, but, on his deathbed, Willis again insisted that if Ted had not severed his relations with his second wife, that "I want you to have Ted make a deed to those motherless children." Miss Vest delivered the documents to Ted after Willis' death.

In her deposition, Miss Vest confirmed the above. She also conceded that had she returned the documents to Willis at any time he would have been at liberty to keep them, that she was willing to return them on request, and that several times she felt like returning them, but that she thought he trusted her with the papers. Other evidence, including Willis' possession and payment of taxes till he died, plus the close friendship, not unreasonably pointed up a custodial relationship, with an understanding that Willis had control over the possession of the documents.

On the basis of the evidence the trial court found there was an agency between Willis and Miss Vest, that there was no effective delivery, that Willis intended to retain control of the documents, that the matter was testamentary in character and hence ineffective to transfer any interest in praesenti. We think the finding was supported by such evidence, if believed by the trial court, and consequently we affirm

that conclusion which cannot be said to be arbitrary or capricious.

The only basic problem here is whether the documents irrevocably were delivered, vesting title in deceased's brother. Defendant urges that plaintiff did not show nondelivery, and that the evidence did not support the findings in favor of plaintiff. We think what we have said above resolves both contentions in favor of plaintiff.

Plaintiff urged that there was no delivery, and that even so the whole transaction was testamentary in nature and violative of the Statute of Wills. We agree on both counts, and as to the latter contention, we have so expressed ourselves,[1] as have other authorities,[2] albeit the authorities are quite in confusion generally.

The Utah authority cited by defendant, in each case was different factually and none seems to have raised or treated the matter of the Statute of Wills, nor do those

I. First Security Bank v. Burgi, 122 Utah 445, 251 P.2d 297 (1952); Alexander v. Zions Saving Bank, 2 Utah 2d 317, 273 P.2d 173 (1954); Alexander v. Zions Saving Bank, 4 Utah 2d 90, 287 P.2d 665 (on rehearing) (1955).

2. Snodgrass v. Snodgrass, 107 Okl. 140, 231 P. 237, 52 A.L.R. 1213 (1924), accord, where the following language commends itself to reason and logic: "[A] man could from time to time execute deeds, mortgages, bills of sale, and assignments of choses in action, conveying all of his property to others who could not learn thereof, deposit same with some third person who did not know of their contents, destroy and change them and convey the property to others from time

cited from sister states. Each case must be decided on its own facts, and the trial court having found as it did, we affirm for reasons hereinabove stated.

McDONOUGH, CALLISTER, CROCK-ETT and WADE, JJ., concur.

to time in a similar method, and all of this he could do in such a manner as to leave the grantees therein named powerless to prevent the changes from being made" and "would retain absolute control over the documents and * * * the property * * * and dying, he would evade the inheritance tax, defeat * * * creditors * * * and deprive the probate courts of all jurisdiction over his estate * * *. Thereby a man's heir * * * and the natural objects of his love and affection would be deprived of the safeguards placed by statute about the execution of a testamentary document which changes the course of descent and distribution by the lawmakers declared to be the natural one."